461 S.W.2d 950 (1970)
Clifford D. PIERCE, Jr., Administrator C. T. A. of the Estate of James H. Tharp, deceased, Complainant,
v.
Ruth Liddell THARP et al., Defendants.
Supreme Court of Tennessee.
December 7, 1970.
*951 C. M. Murphy, Memphis, for Mrs. Frankie Tharp McKown.
Ray A. Bratcher and Clifford D. Pierce, Jr., Memphis, for complainant below.
John M. Heiskell and James S. Gilliland, Memphis, for Ruth Liddell Tharp.
Phil M. Canale, Jr., Dist. Atty. Gen., and Eugene C. Gaerig, Asst. Dist. Atty. Gen., for State of Tenn.

OPINION
W. J. SMITH, Special Justice.
Mrs. Frankie T. McKown and her solicitor C. M. Murphy, filed their motion herein on September 4, 1970, in which they move the Court to (1) set aside and vacate the original decree of the Chancellor; (2) to vacate the decree of the Chancellor refusing to award solicitor's fees and expenses; (3) to vacate the decree of the Court of Appeals upon its published opinion, 58 Tenn.App. 362, 430 S.W.2d 787; (4) to vacate the order of the Supreme Court refusing to grant certiorari to review said published opinion of the Court of Appeals; (5) to vacate the order of the Supreme Court granting certiorari to review the decree of the Court of Appeals awarding solicitor's fees and expenses; and (6) to vacate the decree of the Supreme Court reversing the Court of Appeals decree, and for cause of said motion show; (in substance)
That the controversy arose out of a will which was prepared for decedent, Tharp, by the late Judge Preston Battle, at a time before he was appointed a criminal judge of Shelby County. That when the case was tried before Chancellor Charles Rond, Judge Battle was a criminal judge. Prior to the trial Mrs. McKown requested Judge Battle to confer with her about testator's intent with reference to the residuary trust, but he refused to do so. At the hearing the administrator testified that Judge Battle did discuss the will with him. That after the case was tried and taken *952 under advisement by Chancellor Rond, Judge Battle and the Chancellor conversed with each other and talked about the will and residuary trust out of the presence of and without the knowledge of these movents, and that the original opinion and decree of the Chancellor was based upon some of the argument and opinions advanced by Judge Battle. That, therefore, the constitutional rights of movents have been violated in that the Chancellor heard evidence and arguments which movents were not afforded an opportunity to challenge under Articles 1, sections 8, 17, of the Constitution of Tennessee, and the Fourteenth Amendment to the United States Constitution.
That after the case was heard by the Court of Appeals (Western Section) and taken under advisement, movents are informed and verily believe that during the five month period the Court had the case under advisement, Judge Bejach and Chancellor Rond did talk and converse with each other about the facts and law of the cases; that Chancellor Rond thereby became an advocate before the Court of Appeals as to the merits of his opinion and decree; and movents were not afforded an opportunity to challenge or meet such facts and legal applications, and their constitutional rights were again violated.
That thereafter movents petitioned the Supreme Court of certiorari to review the decision of the Court of Appeals, "Again, the matter rested for some time in the bosom of the Supreme Court, at a time when Judge Creson and Judge Burnett were members thereof." "* * * That during the time before certiorari was denied, Judge Burnett and Judge Creson talked about the facts and the law of the case with Chancellor Rond and with Judge Bejach, and thereupon, Chancellor Rond and Judge Bejach became advocates in support of the position they had already taken; and that such conversations and discussions influenced the Supreme Court to deny certiorari. All these conversations and arguments were done without the knowledge, information or consent of these movents, and operated to deprive them of their constitutional rights. * * *"
Movents further charge * * * that Judge Creson has known about and has discussed with Chancellor Rond the decision about the solicitor's fees at a time or times after the original Chancery Court decision, and before the Supreme Court decree reversing the Court of Appeals. * * * These discussions violated the said constitutional rights of these movents. * * *"
"* * * For the reasons above set out, the Court was subject to influence from facts and opinions not in the record, of which these movents had no knowledge, nor opportunity to meet, rebut or argue against, and were deprived of their right to due process under the state and federal constitution."
"Wherefore, movants pray:
"1. That they be given an opportunity to adduce proof in support of this motion.
"2. That a hearing be set before this Court upon the issues raised herein, at such time thereafter as the orderly business of the court shall obtain.
"3. That all members of the Court who have participated in any decision in this case recuse themselves from acting upon this motion.
"4. That all parties to this suit be required to remain in status quo, and be enjoined not to dispose of or to commit any waste as to any property, real or personal, involved in this suit.
"5. To be allowed to present other reasons in support of this motion, if the proof so indicates.
"5. And they pray for general relief."
On October 2, 1970, Judge Joseph W. Evans filed on behalf of himself and Talmage E. Mugrage a motion "to strike their names from the motion heretofore filed by *953 C. M. Murphy, Solicitor, and would show the Court the following facts, to wit:
"That I discussed with C. M. Murphy filing a motion to retax the cost in the above styled cause; that no other allegations in said motion were discussed; that I did not examine said motion before it was filed.
"Wherefore, movent prays:
"That the name of Joseph W. Evans and Talmage E. Mugrage be stricken from said motion and not be considered on his behalf or his client."
The motion of Judge Evans and Talmage E. Mugrage is sustained, and the names of Joseph W. Evans and his client, Talmage E. Mugrage will be stricken from the motion of C. M. Murphy, et al.
First, Mrs. McKown and Mr. Mugrage style their paper filed herein on September 4, as a motion, yet, and in fact it is a second petition to rehear filed without leave of the Court. Rule 32, 218 Tenn. 826.
"One can only determine the purpose of a suit from the pleadings." Union Tanning Co. v. Lowe, 148 Tenn. 407, 412, 255 S.W. 712, 713; Nelson v. Rural Educational Ass'n, 23 Tenn.App. 409, 134 S.W.2d 181.
The original decree of the chancery court was rendered by Chancellor Rond in 1966, from which an appeal was perfected to the Court of Appeals and determined by that court on December 15, 1967. Certiorari was denied by the Supreme Court, July 5, 1968. The opinion of the Court of Appeals appears in 58 Tenn.App. 362, 430 S.W.2d 787. These decrees are now final.
In Hethcoat v. State, 213 Tenn. 563, 566, 376 S.W.2d 478, 479, it is said:
"* * * This Court, as well as other courts of lower jurisdiction, lose control or jurisdiction over its final judgments when the term is ended or when there has been an expiration of thirty days. State v. Dalton, 109 Tenn. 544, 72 S.W. 456. We consequently have no jurisdiction after final judgments have been rendered in these cases to remand them so that the trial judge might enter any other or different order.
"* * * One of the first reported cases on this question was Anderson v. Thompson, 75 Tenn. (7 Lea), 259, wherein this Court held that a court cannot even by consent set aside, at a subsequent term, its judgment of a former term, except for a clerical mistake or inadvertence; and this can only be done by authority of § 16-309 and § 16-310, T.C.A., which gives the court the opportunity to correct such error. Section 16-309, T.C.A., provides in effect that in all cases in which this Court gives a judgment or decree `when upon the fact of the record no cause of action existed against the party, the court may, upon its own motion, vacate such judgment or decree.' The mere fact that such a statute has been on the books for more than a hundred years implies within itself that this Court has no jurisdiction to vacate or set aside a judgment as here when it is not to correct a clerical error or mistake or things on the face of the record which bring into play § 16-310, T.C.A. It is true that the Anderson case is a civil case, but the same rule applies in a criminal case as shown by State v. Dalton, supra."
The question of counsel fees and expenses were presented to Chancellor Rond, on September 20, 1968, and his decree was entered September 26, 1968. The opinion of the Court of Appeals was filed May 28, 1969. Certiorari was granted and the case set down for argument December 1, 1969. The case was presented to this Court on April 6, 1970. Petitioners had five months after certiorari was granted to prepare their case. The matters now brought forward in the petition (called a motion by movents) could have been investigated *954 during the five months waiting period. But petitioners preferred to rest on their oars until the Court announced its decision, and then come forward with a belated effort to charge that some of the justices on the Court were disqualified to hear the case. If any member of the Court were disqualified to participate in the hearing, such incompetency was waived by failure of petitioners or movents to make objection in limine on the hearing and petitioners are conclusively presumed to have consented to his or their participation in the hearing. Wroe v. Greer, 32 Tenn. 172 (2 Swan); Crozier v. Goodwin, 69 Tenn. 125; Grundy County v. Tennessee Coal Iron & R. Co., 94 Tenn. 295, 325, 29 S.W. 116; In re Cameron, 126 Tenn. 614, 662, 151 S.W. 64; Obion County for Use of Houser Creek Drainage Dist. v. Coulter, 153 Tenn. 469, 480, 284 S.W. 372.
As stated the first item of the prayer of the motion (petition) is "That they be given an opportunity to adduce proof in support of this motion." The second item of the prayer of the petition is "That a hearing be set before this Court upon the issues raised herein * * *". A rather unique and novel proposal since this Court is a court of appellate jurisdiction only. T.C.A. § 16-304; Simm v. Dougherty, 186 Tenn. 356, 210 S.W.2d 486; Memphis St. Railroad Co. v. Byrne, 119 Tenn. 278, 104 S.W. 460; In re Bowers, 137 Tenn. 193, 192 S.W. 919.
In re Bowers, supra, it is said:
"Section 2 of article 6 of the state Constitution provides that the jurisdiction of the Supreme Court `shall be appellate only * * *.'
"This section of the Constitution has been construed in many cases, and the holdings of this court have been uniform to the effect that it is without original jurisdiction in any matter, and that it is beyond the power of the Legislature to confer original jurisdiction upon it. King v. Hampton, 3 Hayw. 59; Miller v. Conlee, 5 Sneed, 432; State v. Bank [of East Tennessee], 5 Sneed, [573] 577; State [ex rel. Richards] v. Sneed, 105 Tenn. 711, 58 S.W. 1070; [Memphis St.] Railroad v. Byrne, 119 Tenn. 278, 104 S.W. 460; State ex rel v. Hebert, 127 Tenn. [220] 240, 154 S.W. 957; State v. Gannaway, 16 Lea, 130."
The petition (called a motion) "* * * charges as a fact that the two members (Mr. Chief Justice Burnett and Mr. Justice Creson) who refused the first certiorari had become convinced as to their conclusion of the issues, and upon facts and information and opinions not presented to this Court when the second application for certiorari was granted, that they influenced the entire Court to their opinion."
Before the case was presented to the Court Mr. Chief Justice Burnett had retired, so he was not on the Court. The sole and only action taken by Mr. Justice Creson was to concur in the opinion of the Court. Mr. Justice Creson made no statement before the case was determined as to how it should be decided.
"It is exceedingly easy for litigants and counsel to imagine that a judge is prejudiced against a party, or against his counsel, who has failed to successfully prosecute, or successfully defend, any one or more cases. It is an infirmity of human nature that counsel, whose feelings and personal interests are deeply enlisted in every important case they try, are frequently unable to attribute want of success to the inherent weakness of the case, or their own shortcomings in the management of it. It is a matter of general knowledge among lawyers that the refuge of defeated counsel is far too often abuse of the court, referred to pithily by lawyers as `cussin' the court.' When the tide turns, and success crowns the efforts of previously disappointed counsel, his opinion of the intelligence, learning, and probity of the court experiences a high, upward tendency." In re *955 Cameron, 126 Tenn. 614, 650, 151 S.W. 64, 74.
In Chumbley v. People's Bank & Trust Co., 165 Tenn. 655, 57 S.W.2d 787, this Court said:
"* * * The interest which disqualifies a Judge is a direct pecuniary or property interest, or one which involves some individual right in the subject matter of the litigation, whereby a liability or pecuniary gain must occur on the event of suit. Ex parte Alabama State Bar Association, 92 Ala. 113, 8 So. 768, 12 L.R.A. [134] 136; 33 C.J. p. 992, § 135, p. 994, § 137."
The court in Winter v. Allen, 166 Tenn. 281, 62 S.W.2d 51, had this to say:
"The rule is well settled in this state, certainly in civil cases, that a party may waive the imcompetency or lack of authority to act of the trial judge, and does so waive it by implication when no objection is made at the trial and in the trial court. As said by Judge Freeman in Crozier v. Goodwin, 1 Lea [125], 128, `It would be monstrous to allow a party to acquiesce in the action of such a court without objection, and then, on appeal show the fact as ground for reversal.' See Wroe v. Greer, 2 Swan, 172; Holmes v. Eason, 8 Lea, 754; Posey v. Eaton, 9 Lea [500], 501."
The same rule would apply in this Court.
Counsel state in their petition that:
"The constitutional rights of these movents have been violated thereby in that the chancery court has heard evidence and arguments which these movents were not afforded an opportunity to challenge or argue against. Art. 8 and 17, sec. 1, Constitution of Tennessee; 14 Amendment, United States Constitution."
We presume he meant Article 1, sections 8 and 17. Counsel and his client have had the process of the chancery court, the Court of Appeals and the Supreme Court, all legally constituted.
The constitution prescribes that this Court shall be composed of five Judges: yet the same instrument prescribes that the concurrence of three shall make a constitutional judgment. Article VI, sec. 2; Radford Trust Co. v. East Tennessee Lumber Co., 92 Tenn. 126, 138, 21 S.W. 329. Neither Mr. Justice McCanless, who had only been on the Court three months when the petition for certiorari was granted December 1, 1969, nor Mr. Special Justice Jenkins nor the Special Justice who prepared the opinion for the Court, ever heard of the case until it was argued and presented to the Court on April 6, 1970, so these three justices could, and did, make a constitutional judgment in the case.
Every lawyer, worthy of respect, realizes that public confidence in our courts is the cornerstone of our governmental structure, and will refrain from unjustified attack on the character of the judges. Kentucky State Bar Ass'n v. Lewis, 282 S.W.2d 321, 326. And, it is the duty of the lawyer to maintain towards the Court a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Canons of Professional Ethics, American Bar Association, p. 116.
The second petition to rehear or motion, as it is called, is dismissed at the cost of petitioners. C. M. Murphy and Mrs. Frankie T. McKown.
DYER, C. J., McCANLESS, J., and JENKINS, Special Justice, concur.
CRESON, J., not participating.