Jerry W. PECK

v.

William B. TANNER and
Tanner–Peck, LLC.

Supreme Court of Tennessee,
at Jackson.

April 5, 2005 Session.

June 24, 2005.

William Ernest Norcross, Robert D. Flynn, and Minton P. Mayer, Memphis, Tennessee, for the Appellants, William B. Tanner and Tanner–Peck LLC.

Mimi Phillips and Roy H. Chockley, Jr., Memphis, Tennessee, for the Appellee, Jerry W. Peck.

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

## OPINION

This civil action pertains to an alleged business partnership between the individual parties. The trial court entered a judgment in favor of the defendants, and the plaintiff appealed. While the appeal was pending, the plaintiff filed a motion in the Court of Appeals alleging misconduct by the chancellor during the trial proceedings and requesting that the intermediate court "investigate and rule on whether and how [the plaintiff's] allegations will affect the appeal of this matter." The Court of Appeals granted the motion and remanded the case to the trial court, providing in its order that the trial court would supervise the taking of discovery and that the additional evidence then would be transmitted to the intermediate court and the case would be set for oral argument. We hold that the procedure adopted by the Court of Appeals exceeded its appellate jurisdiction; the proper remedy would have been for the plaintiff to file a motion asking the intermediate court to remand the case to the trial court for the filing and adjudication of a motion pursuant to Tennessee Rule of Civil Procedure 60.

Summary of Facts & Proceedings Below

The complaint alleged breach of a partnership agreement and fraud and sought an accounting and damages.[2] The plaintiff, Jerry W. Peck, asserted that he and the defendant, William B. Tanner, entered into a partnership to operate a billboard business (Tanner–Peck LLC). When Tanner later sold the business for approximately seventy-three million dollars, Peck filed the pending lawsuit, seeking his alleged partnership share in the proceeds of the sale. Following a lengthy non-jury trial, the trial court entered a judgment for the defendants. In summary, the trial court found that Tanner and Peck had entered into a written, limited partnership agreement pertaining only to sixty-two billboards that Peck had previously transferred to Tanner as part of the formation of the limited partnership. The court found that the limited partnership formed by Peck and Tanner was limited to those sixty-two billboards and did not extend to the entire business that Tanner subsequently sold; the trial court therefore found that Peck, who had received the money to which he was entitled for the sale of the sixty-two billboards, was not entitled to a share of the total proceeds of the sale. Accordingly, the trial court entered a judgment in favor of the defendants. The trial court also ordered Peck to pay the defendants approximately $720,000 in attorneys' fees and discretionary costs.

Peck filed a timely notice of appeal from the trial court's judgment and also filed a second notice of appeal pertaining to the post-trial order awarding attorneys' fees and litigation expenses.[3] After delays resulting from the filing of various motions in the Court of Appeals, the case was

---

2. We note that the "Petition for Accounting; Complaint for Damages and for a Constructive Trust" was filed on November 25, 1996. The trial of the case did not begin until March 13, 2001.

3. The notices of appeal were filed on November 2, 2001, and November 27, 2001, respectively.

scheduled for oral argument on October 16, 2003.

On October 2, 2003, Peck filed a "Motion to Suspend the Rules Pursuant to T.R.A.P. 2 and 22(a)." In that motion, Peck stated that he had learned, subsequent to trial, that the chancellor allegedly had an undisclosed business relationship with Tanner[4] and that Tanner allegedly had paid the expenses for a one-week vacation in Florida for the chancellor and his family during the time the case was pending in the trial court. Peck asked the Court of Appeals to remove the case from the docket for oral argument and to stay the appellate proceedings while the allegations concerning Tanner and the chancellor were investigated by law enforcement agencies. The defendants' counsel agreed to a suspension of the appeal. The Court of Appeals granted Peck's motion and suspended the appeal, pending further order of the court. The parties jointly submitted an interim status report to the intermediate court on November 26, 2003, advising the court that the criminal investigation was continuing. By order entered on December 10, 2003, the court ordered the parties to submit another status report on or before February 2, 2004, "and [to] file any motions which will be appropriate for commencing the case proceedings."

On January 26, 2004, Peck filed a motion requesting the Court of Appeals to rule on the matters raised in the "Motion to Suspend the Rules" filed on October 2, 2003. The motion filed on January 26 stated that the criminal investigation was on-going, but that law enforcement officials had indicated that the investigation would not be compromised "by this Court's inquiring

into the question of whether some judicial impropriety occurred which would affect the judgment on appeal and dictate the relief to be granted here [in the Court of Appeals]." The motion stated that "in view of the uncertain timeframe [sic] attending the criminal investigation, and in view of the fundamentally different area of inquiry facing this Court, fairness requires that this Court now investigate and rule on whether and how Appellant's allegations will affect the appeal of this matter." The motion went on to ask the Court of Appeals "to initiate an investigation or inquiry which will yield a supplemental Record on the matters alleged in Appellant's Motion filed October 3, 2003, and that said supplemental Record be considered in the disposition of this case pursuant to T.R.A.P. 36(a)." In requesting that relief, Peck suggested that the Court of Appeals appoint a "Special Master" to investigate the matter. The intermediate court took Peck's January 26 motion under advisement.

On April 1, 2004, the Court of Appeals entered an order effectively granting Peck's January 26 motion. The Court of Appeals found that it could not resolve the issues concerning the alleged improprieties by the chancellor because there were no facts in the evidentiary record concerning those allegations. The intermediate court stated that "the proper and just method of bringing this case to a conclusion is to remand the case to the trial court for the limited purpose of allowing the parties to conduct discovery proceedings under the direction of the trial court concerning the subsequently relied upon facts."[5] The

4. The alleged business relationship between the chancellor and Tanner apparently was unrelated to the billboard business that was the subject of the pending litigation.

5. In addition to allowing discovery concerning the alleged improprieties by Tanner and the chancellor, the intermediate court's order also would have allowed discovery concerning allegations by the defendants that Peck had "unclean hands"; those allegations had

court's order concluded by stating, in pertinent part:

> IT IS, THEREFORE, ORDERED that this case be and the same is hereby remanded to the trial court for the purpose of allowing the discovery proceedings referred to under the supervision of the trial court. Upon completion of the discovery proceedings, such depositions or other material shall be made a supplement to the record on appeal and duly filed with the Clerk of this Court and at such time this case will be set for oral argument.

Following entry of the Court of Appeals' order on April 1, 2004, Tanner and Tanner–Peck, LLC, filed an application for an extraordinary appeal to the Supreme Court pursuant to Tennessee Rule of Appellate Procedure 10. They argue, in summary, that the Court of Appeals' order exceeded that court's appellate jurisdiction. The applicants asserted that the procedure adopted by the Court of Appeals in the April 1 order was an exercise of original jurisdiction, under which the intermediate court ultimately would determine the facts concerning the alleged misconduct of the chancellor. We granted the application for an extraordinary appeal to review the procedure adopted by the Court of Appeals. For the reasons discussed below, we conclude that the procedure adopted by the Court of Appeals exceeds that court's appellate jurisdiction. Accordingly, we vacate the intermediate court's order filed on April 1, 2004, and remand the case to the Court of Appeals for resumption of the appeal as of right.

## Standard of Review

▆▆▆ Following the granting of an application for an interlocutory or extraordinary appeal, the standard of review is the same standard that would have been applied to the issue(s) in an appeal as of right. *State v. Moore,* 775 S.W.2d 372, 374 (Tenn.Crim.App.1989). The issue before us concerning the scope of appellate jurisdiction is a question of law; as a result, our review is de novo without a presumption of correctness. *See State v. Cawood,* 134 S.W.3d 159, 163 (Tenn.2004); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

## Analysis

We begin our analysis by considering the statute establishing the jurisdiction of the Court of Appeals. As provided in Tennessee Code Annotated section 16–4–108(a)(1) (1994): "The jurisdiction of the court of appeals is appellate only, and extends to all civil cases except workers' compensation cases and appeals pursuant to § 37–10–304(g)." The meaning of the statute is plain—the intermediate court's jurisdiction is "appellate only."

We turn next to cases applying either section 16–4–108(a)(1) or Article VI, section 2 of the Tennessee Constitution (providing that "[t]he jurisdiction of this [the Supreme] Court is appellate only ...."). In a number of cases involving the scope of appellate jurisdiction, this Court and the Court of Appeals have consistently held that the appellate courts cannot exercise original jurisdiction and that their jurisdiction is "appellate only." *See, e.g., Duncan v. Duncan,* 672 S.W.2d 765, 767 (Tenn. 1984); *Dorrier v. Dark,* 537 S.W.2d 888, 890 (Tenn.1976); *Clement v. Nichols,* 186 Tenn. 235, 209 S.W.2d 23 (1948); *Fine v. Lawless,* 140 Tenn. 453, 205 S.W. 124 (1918); *Kinard v. Kinard,* 986 S.W.2d 220,

been made by the defendants in a motion to consider post-judgment facts, which motion had been denied by the Court of Appeals.

227 (Tenn.Ct.App.1998); *Mallicoat v. Poynter*, 722 S.W.2d 681, 682 (Tenn.Ct. App.1986); *Irvin v. Binkley*, 577 S.W.2d 677, 679 (Tenn.Ct.App.1978); *Standard Oil Co. v. Naramore*, 30 Tenn.App. 430, 207 S.W.2d 7, 15 (1947).

One case is particularly instructive in the context of the pending case. In *Pierce v. Tharp*, 224 Tenn. 328, 461 S.W.2d 950, 954 (1970), the plaintiffs filed a "motion" (in actuality, a second petition to rehear) in this Court alleging, in pertinent part, that two members of the Court had engaged in private communications with the chancellor and an intermediate court judge concerning disputed issues in the case. The plaintiffs requested "[t]hat they be given an opportunity to adduce proof in support of this motion" and that "a hearing be set before this [the Supreme] Court upon the issues raised herein." *Id.* We dismissed the "motion," noting that it was "[a] rather unique and novel proposal since this Court is a court of appellate jurisdiction only." *Id.* (citations omitted). We then went on to state:

> *In re Bowers*, [137 Tenn. 193, 192 S.W. 919 (Tenn.1917)], it is said:
>
> "Section 2 of article 6 of the state Constitution provides that the jurisdiction of the Supreme Court 'shall be appellate only * * *.'"
>
> "This section of the Constitution has been construed in many cases, and the holdings of this court have been uniform to the effect that it is without original jurisdiction in any matter, and that it is beyond the power of the Legislature to confer original jurisdiction upon it."

*Id.* (citations omitted). *Pierce* involved a situation analogous to the pending case—an allegation, first raised on appeal, of misconduct by judges and an attempt to "adduce proof" and have the appellate court determine the merits of the allegations. *Pierce* stands for the proposition

that an appellate court cannot exercise original jurisdiction over such matters.

In granting the plaintiff's motion in the pending case, the Court of Appeals ordered that:

> this case be and the same is hereby remanded to the trial court for the purpose of allowing the discovery proceedings referred to under the supervision of the trial court. Upon completion of the discovery proceedings, such depositions or other material shall be made a supplement to the record on appeal and duly filed with the Clerk of this Court and at such time this case will be set for oral argument.

■ Under the intermediate court's order, the trial court would merely "supervise" the taking of discovery, and the Court of Appeals would decide the merits of the allegations of misconduct by the chancellor. This procedure necessarily would make the Court of Appeals the trier-of-fact in the first instance as to the allegations, an exercise of original jurisdiction. Based upon the foregoing authorities, we conclude that the procedure adopted by the Court of Appeals exceeded its appellate jurisdiction. *See also Cole v. Clifton*, 833 S.W.2d 75, 78 (Tenn.Ct.App. 1992) (stating that "[a]s an appellate court, we are limited in our review to facts in the record considered by the trial court and, therefore, we are not in a position to consider the effect of evidence not before the trial court at the time of its decision").

■ Our holding that the Court of Appeals exceeded its appellate jurisdiction in ordering the novel procedure it adopted does not leave the plaintiff without a remedy. Tennessee Rule of Civil Procedure 60 provides the appropriate remedy. Rule 60.02 provides:

> On motion and upon such terms as are just, the court may relieve a party or the

party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. Writs of error coram nobis, bills of review and bills in the nature of a bill of review are abolished, and the procedure for obtaining relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

While Rule 60 affords a procedural remedy to the plaintiff in the pending case, he would first have to file a motion in the appellate court, asking that the case be remanded to the trial court for the filing and adjudication of a Rule 60 motion. As we previously have stated:

> a trial court has no jurisdiction to consider a Rule 60.02 motion during the pendency of an appeal. If a party wishes to seek relief from the judgment during the pendency of an appeal, he should apply to the appellate court for an order of remand. We stress that because the trial court will most likely be in a better position to quickly assess the merits of such a motion, leave should be freely granted by the appellate court if the motion is not frivolous on its face.

*Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 596 (Tenn.1994) (footnote omitted).

The plaintiff has not asked this Court (or the Court of Appeals) to remand the case pursuant to *Spence* for the filing of a Rule 60 motion. Because the plaintiff may have made a deliberate choice not to do so, we decline to do so on our own initiative. Our resolution of the issue in this extraordinary appeal, however, does not preclude the plaintiff from requesting such relief from the Court of Appeals following our remand to that court.[6] We hasten to add, however, that nothing in our analysis should be interpreted as expressing an opinion as to the merits of a Rule 60 motion, should one ultimately be filed; the merits of such a motion would be decided by the trial court, based upon the evidence presented in that court following a remand by the Court of Appeals.

6. As stated earlier in this opinion, the chancellor who presided over the trial of the case has died, and a Rule 60 motion therefore would be ruled upon by his successor. We note, however, that in cases involving alleged judicial misconduct and in which the same trial judge is still on the bench, the party could file both a Rule 60 motion and a motion for the trial judge to recuse himself or herself. If the judge declines to recuse himself or herself and goes on to decide the Rule 60 motion, both rulings then could be challenged on appeal based upon the record developed in the trial court.

In conclusion, we hold that the Court of Appeals exceeded its appellate jurisdiction in remanding the case for discovery concerning the allegations of misconduct and in ordering that the discovery materials be transmitted to the intermediate court as a supplemental record. The clear effect of the intermediate court's order is that the Court of Appeals, not the trial court, would have determined the merits of the allegations, which necessarily would have required the Court of Appeals to make factual findings based upon the "supplemental record." We conclude that such a determination would have been an unauthorized exercise of original jurisdiction. Tennessee Rule of Civil Procedure 60 and our decision in *Spence* provide a procedural remedy to the plaintiff for litigating the allegations of misconduct.

The order filed by the Court of Appeals on April 1, 2004, is vacated, and the case is remanded to the Court of Appeals for resumption of the appeal as of right. The costs of this Rule 10 extraordinary appeal shall be taxed to the plaintiff-appellee, Jerry W. Peck, for which execution may issue if necessary.