IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 01, 2014 Session

## ANN C. AKARD v. WAYNE F. AKARD

**Appeal from the Chancery Court for Sullivan County**
**No. B0023602C     John S. McLellan, III, Judge, by Interchange**

_____

**No. E2013-00818-COA-R3-CV-FILED-NOVEMBER 25, 2014**

_____

This is a divorce case. After the trial court entered the final decree of divorce and awarded Wife/Appellee attorney's fees associated with a motion to compel, Husband/Appellant filed this appeal. Although Husband did not formally file a motion to recuse either trial judge involved in this case, his appeal centers on alleged judicial and opposing counsel misconduct. Husband also seeks a new trial. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., and KENNY ARMSTRONG, J. joined.

Wayne Franklin Akard, Knoxville, Tennessee, Pro se.

Charles L. Moffatt, IV, Bristol, Tennessee, for the appellee.

**OPINION**

**Background**[1]

Ann C. Akard ("Wife") and Wayne F. Akard ("Husband") entered into an Antenuptial Agreement on December 1, 2009. Neither party disputed the validity of their Antenuptial

---

[1]None of the proceedings in this case were transcribed by a court reporter. Thus, the facts from the case's background are elicited from the technical record and, when in dispute, the Statement of the Evidence as approved by the trial court.

Agreement. The Antenuptial Agreement included a heading titled "Assets Acquired During Marriage." Under this heading, the agreement provides that any property acquired during the marriage would constitute marital property and would be divided equally upon divorce. Another heading, titled "Separate Ownership of Assets," includes two sub-headings. The first sub-heading, "Assets Owned at Time of Marriage," provided that each spouse would retain sole ownership over any property owned at the inception of the marriage. The second sub-heading is titled "Assets Acquired During Marriage" and states that Wife and Husband could also choose to acquire assets in their joint names and such property would be owned jointly with the right of survivorship. Shortly after entering the Antenuptial Agreement, the parties married on December 27, 2009. This was Wife's third marriage and Husband's fourth marriage. No children were born during the marriage.

Shortly after the parties were married, Husband suggested that he and Wife open joint bank accounts, which they did at Bank of America and Wachovia Bank. Husband deposited all of the funds in the accounts during their existence.[2] The parties do not dispute that Wife never deposited any money into the accounts. Both parties had check-writing abilities for the accounts. Wife used these accounts to pay taxes, make seven loan payments on her car, pay credit cards, and pay homeowner's insurance on her house.

Before she filed her complaint for divorce, Wife asked Husband to move out of their residence several times. Wife filed for divorce on January 17, 2012 in the Sullivan County Chancery Court.[3] The case was originally assigned to Chancellor E. G. Moody. At the time of the filing of the divorce complaint, both parties still lived together, and according to Wife, the parties got into an argument where Wife felt "physically intimidated." During one argument, Husband said he would not leave until Wife gave him permission to withdraw funds from the parties' joint bank accounts. Wife signed a handwritten note authorizing this. On January 18, 2013, Husband withdrew all of the funds from the accounts. He used the funds for improvements to his rental properties and for his condominium fees.

Several weeks later, on February 2, 2012, Husband filed his answer, denying any

---

[2]The amount in the accounts fluctuated, but Husband testified that he always kept a significant balance in the accounts because he was opposed to paying any bank account fee or service charges. The record on appeal is unclear as to the source of the funds Husband deposited into the accounts.

[3]We note that the date Wife filed for divorce, as file-stamped on the complaint appears to January 17, 2012. However, Wife's approved Statement of the Evidence and her appellate brief both provide that "[Wife] signed her Complaint for Divorce" on January 13, 2013 and that she filed it on January 17, 2013, at which time the parties still shared a residence. For purposes of this Opinion, we will use 2012 as the year for the signing and filing of the complaint. Still, we note that the date does not affect the analysis in this Opinion.

grounds for divorce. He also stated that he "would seek nothing other than an [e]quitable division of marital property." It is unclear for how long the parties resided together, but on February 3, 2012, the trial court held a hearing on Wife's motion for exclusive possession of the marital residence, which she owned solely in her name. By written order entered on the same day, Husband was ordered to immediately vacate the premises.

On March 5, 2012, Wife filed a Request for Production of Documents. Husband failed to appear at Wife's counsel's office with the documents on April 9, 2012, the date provided in Wife's motion. Wife's counsel filed a Motion to Compel Production of Documents on April 30, 2012. On May 10, 2012, Husband responded to Wife's motion in the form of a Motion for Rule 11 Sanctions against Wife's counsel. In his motion for sanctions, he accused Wife's counsel of improperly collecting fees from Wife,[4] intentionally and improperly classifying items of the parties as marital property, and adversely affecting Husband's health through prolonging the case.[5] At the hearing on these motions, Husband, in his appellate brief and reply brief, contends that he was not allowed to speak. He further called the hearing a "totally Fraudulent, less then 5 minute, Mockery of a Trial." By order entered on June 30, 2012, the trial court granted Wife's motion to compel and ordered Husband to produce the documents, including those relating to the joint bank accounts.

On December 5, 2012, Chancellor Moody transferred the pending matter to Judge John S. McClellan, III, "upon the court's own motion and for good cause shown."[6]

---

[4]Wife, in her Response to Husband's "MOTION for the court's understanding and to seek Sanction for Plaintiff's Attorney for Violation of TRCP RULE 11 in his Rule 17 Filings," denied Husband's assertions that this was an uncontested case. Husband had previously contended that the divorce was "basically non contested" because "only a bookcase and some bed linens were contested." Wife further provided that she "is satisfied with her attorney's communication with her regarding the status of these legal proceedings and the Defendant's proposals."

[5]Husband's motion explains:

> While playing bridge at the Senior Center, I began to have chest pains and severe tremors in both my hands and arms. I thought I was having another heart attack or stroke from all the stress of this prolonged case, which would not have built up so much had Mr [sic] Moffatt ever acted in good faith and gotten the case over with much sooner. The Sr. Center Nurse called 911 and I was sent to the Emergency Room via Ambulance. . . . I have had several more milder attacks–milder tremors with no chest pain.

[6]In Husband's response to Wife's motion seeking attorney's fees, Husband refers to a letter he sent to the first trial judge in the case. The first trial judge ultimately did transfer the case to the second trial

(.....continued)

The divorce trial was held on January 30, 2013 before Judge McLellan. At the time of the divorce trial, Wife was 70 years old, and Husband was 71 years old. There were no marital debts. Neither party retained a court reporter at trial, so no transcript of the trial proceedings is included in the record on appeal. After Husband filed his notice of appeal, he filed his proposed Statement of the Evidence on May 20, 2014, which Wife objected to on June 13, 2013.[7] Wife filed her Statement of the Evidence on July 15, 2013. Husband likewise objected to Wife's Statement of the Evidence. By order of July 19, 2013, the trial court determined that Husband's Statement of the Evidence "[did] not convey a fair, accurate and complete account of what transpired with respect to relevant issues that are the basis of appeal." Further, the trial court said that Husband's Statement of the Evidence contains "eleven pages of [Husband]'s improperly concluded, misstated and unsubstantiated accusations." With a few additions, Wife's Statement of the Evidence was approved by the trial court.

According to the approved Statement of the Evidence, Wife owned separate property prior to the marriage, including her home, her Saturn vehicle, separate household furnishings, a BB&T Bank checking account, BB&T stock, a 401k plan, an individual retirement account, jewelry, and a lawnmower. Husband owned separate property prior to the marriage as well, including four homes and two condominiums that are rental properties, one home that is his residence, two vehicles, a Home Federal bank account, a First Tennessee Bank Account, and a Yamaha motorcycle. Although it does not appear in the approved Statement of the Evidence, Husband avers that, at the divorce trial, he was "muzzled and not allowed to argue [his] case." He further stated that the second trial judge twice denied him "a chance to speak and present some critical evidence on the division of Property he had just declared to be Marital Property."

The trial court entered the Judgment of Absolute Divorce on February 22, 2013. The court found that the joint bank accounts were marital property that was divided after the court deducted several of Husband's expenditures where he used funds from the accounts. In the

---

(.....continued)

judge. However, the letter, which purports to be a motion to recuse, was never filed. It contains neither an official file stamp, nor a certificate of service. Further, it is not included anywhere in the technical record other than as an attachment to Husband's response regarding an unrelated motion. The order approving Wife's Statement of the Evidence indicates that the first trial judge recused himself after the Husband filed a "Complaint before the Court of Judiciary."

[7]On July 5, 2013, this Court, after receiving the record on appeal, ordered the trial court to determine whether to accept Wife's untimely objection to Husband's Statement of the Evidence. Further, the trial court was also ordered to "resolve the parties' differences" regarding the Statement of the Evidence and retransmit the record to this Court.

Judgment of Absolute Divorce, Husband's Motion for Rule 11 Sanctions, originally filed May 10, 2013, was dismissed as "legally insufficient." The only remaining motion pending at the time of trial was Husband's "MOTION for the court's understanding and to seek Sanction for Plaintiff's Attorney for Violation of TRCP RULE 11 in his Rule 17 Filings," originally filed January 30, 2013, which the trial court also dismissed in the Judgment of Absolute Divorce for failure to timely prosecute when it entered the final judgment of divorce. Finally, by written order entered March 25, 2013, the trial court awarded Wife's attorney's fees she incurred in connection with her motion to compel Husband's compliance with a request for production of documents. Husband also contends, although not in the approved Statement of the Evidence, that he was not allowed to speak at this hearing either.

Husband timely filed his Notice of Appeal on March 22, 2013.[8]

## Analysis

As an initial matter, we note that Husband has proceeded *pro se* throughout the proceedings in the trial court and this appeal. It is well settled that *pro se* litigants must comply with the same standards to which lawyers must adhere. **Jackson v. Lanphere**, No. **M2010-01401-COA-R3-CV, 2011 WL 3566978, at \*3 (Tenn. Ct. App. Aug. 12, 2011)** (quoting **Hessmer v. Hessmer**, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson*, 2011 WL 3566978, at \*3. With the foregoing in mind, we turn to address the procedural and substantive issues of Husband's appeal.

---

[8]We note that the Notice of Appeal in this case was filed before the trial court entered its order granting Wife an award of her attorney's fees in connection with her motion to compel. A prematurely filed notice of appeal does not bar an appeal to this Court. Tennessee Rule of Appellate Procedure 4 provides that a premature notice should "be treated as filed after the entry of the judgment . . . and on the day thereof." Tenn. R. App. P. 4(d).

In his brief, Husband raises the following issue for review:

> This is not the typical statement of an error by the Trial Court Judge, or a dispute over a particular point of law. It is a charge of Gross Judicial Misconduct by two Judges through Collusion with the Plaintiff's/Appellee's Attorney resulting in multiple Collusive, Premeditated, Predetermined, and Fraudulent Decisions/Judgements fully worthy of being overturned.

Wife does not raise any of her own issues for appeal, but provides a Statement of the Issues in her brief, as set out below:

> I. Whether the trial court erred in classifying the proceeds from the joint bank accounts established during the marriage and the furniture purchased during the marriage as marital property?
>
> II. Whether the trial court erred in awarding the Plaintiff attorney's fees against Defendant in connection with her Request for Production of Documents and her Motion to Compel Production of Documents?
>
> III. Whether any of Defendant's allegations of fraud, collusion and unethical conduct against the Plaintiff's counsel and the trial judges are matters for review by the Court of Appeals in this case?

In his reply brief, Husband insists that Wife's Statement of the Issues is "grossly erroneous." He contends that his Statement of the Evidence[9] made it "perfectly clear" that the decisions of the trial court were "no errors in Judgement, misinterpreting evidence, or in any way accidental. They are blatantly Premeditated, Predetermined,, [sic] and knowingly and intentionally FRAUDULENT DECISIONS." Further, he states that his appellate brief "had clearly stated an issue of Gross Judicial Misconduct by 2 Judges through Collusion with Appellee's Attorney, resulting in Collusive, Premeditated, Predetermined, and Fraudulent Decisions and Judgements." Finally, again in his reply brief, he provides:

> Appellee's Brief Item III is not an issue of the case, but a desperate attempt by Appellee's Attorney to not have the case heard or suppress solid evidence of the Attorney's Unethical Conduct, the Collusion, and the Judicial Misconduct. Appellate [sic] avers that if both Judges and Attorney were not guilty of

---

[9]Husband's Statement of the Evidence was ultimately rejected by the trial court.

Collucion [sic] and Fraud they would welcome the charges to be
heard and then refute them in oral argument to clear their names.

We are unable to tell precisely which points of the trial court's judgment Husband requests us to reverse. In fact, Husband provides, in the Statement of the Facts section in his brief that "the appeal is not based on any point of law or judicial error." In an abundance of caution, we will consider whether the additional issues addressed by Wife's brief were fairly raised in Husband's brief. From our review of Husband's brief, we conclude that they were not.

We first turn to Wife's issue concerning the classification of marital property. In his brief, Husband mentions that the "second Collusive Judge, through Collusive Premeditation, knowingly and Fraudulently ruled these items to be Marital Property, a major point under Appeal." Despite his reference to marital property in his brief, Husband fails to include in his Statement of the Issues any reference to the classifications of items "falsely declared to be Marital Property." Husband also fails to cite any law offering guidance on the division of marital property as it occurred in this case. In addition, we note that Rule 7 of the Rules of the Court of Appeals of Tennessee requires that, in all cases where a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property. In **Forbess v. Forbess**, 370 S.W.3d 347, 354 (Tenn. Ct. App. 2011), we discussed the Rule 7 Table:

> This Court has previously held where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements. This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property. This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7.

**Id.** (citing **Harden v. Harden**, No. M2009-01302-COA-R3-CV, 2010 WL 2612688 (Tenn. Ct. App. June 30, 2010)). No Rule 7 chart is contained in Husband's brief. Because of these deficiencies, any issues related to the division of marital property are waived. *See* Tenn. R. App. P. 27(a)(4), (7); **Forbess v. Forbess**, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that husband waived an issue by his failure to designate it as an issue in his statement of the issues); **Newcomb v. Kohler Co.**, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the "failure of a party to cite any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue").

Wife also suggests in her Statement of the Issues that Husband may be appealing the award of attorney's fees to her in connection with her motion to compel. Indeed, Husband refers to attorney's fees in his Statement of the Case:

> Other major Decisions under Appeal are strictly about the Plaintiff's/Appellee's Attorney and awarding of fees to him from the Defendant/Appellant for the Fraudulent Mockery of a Trial on 5/18/12 and also for dismissal of Motions to Sanction him without their [sic] ever being allowed to be heard.

Again, despite his contentions in his Statement of the Case, Husband neither lists the award of attorney's fees in his Statement of the Issues, nor does he cite any relevant law providing guidance to this Court. Thus, any issue related to attorney's fees is waived. *See* Tenn. R. App. P. 27(a)(4), (7); **Forbess**, 370 S.W.3d at 356 (Tenn. Ct. App. 2011); **Newcomb**, 222 S.W.3d at 401. Accordingly, as we perceive it, Husband's appeal centers on what he did include in his Statement of the Issues—that is, whether the trial judges who heard the cases were biased and thus, should have recused themselves, and whether a new trial should be ordered in front of a unbiased judge.

Before we address the remainder of Husband's appeal, we note that Husband's brief, even on the one issue properly raised in his Statement of the Issues, is woefully deficient. First, as with the issues of marital property and attorney's fees, Husband fails to cite any law other than the provision of the Code of Judicial Conduct he alleges the trial judges violated and a similar statute found in the Tennessee Code Annotated. We note again that this Court has repeatedly held that a party's failure to cite any authority for its arguments leads to a waiver of the issue on appeal. *E.g.*, **Forbess v. Forbess**, 370 S.W.3d 347 (Tenn. Ct. App. 2011) ("[W]e cannot overlook Wife's failure to cite any applicable law in her brief supporting her arguments regarding the division of marital property, other than the distribution of marital property statute."). Second, Husband's brief lacks a "concise statement of the applicable standard of review" for the issue he presents as required by Tennessee Rule of Appellate Procedure 27(a)(7). Additionally, despite our best efforts, it is difficult to understand the arguments raised by Husband throughout his brief.

Turning to the record on appeal, our review also reveals that Husband never filed a motion to recuse either of the trial judges. In **Peck v. Tanner**, 181 S.W.3d 262 (Tenn. 2005), the Tennessee Supreme Court held that an appellate court does not have original jurisdiction over allegations of misconduct of a trial judge when they are first raised on appeal. **Id.** at 266. Thus, a litigant must file a motion to recuse "promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality." **Kinard v. Kinard**, 986 S.W.2d

220, 228 (Tenn. Ct. App. 1998) (citations omitted). In his reply brief, Husband concedes he did not file a motion to recuse or a formal complaint against the second trial judge:

> I have not filed charges against [the second trial judge] with the Board of Judicial Conduct. . . . As long as the [two members of the Disciplinary Counsel for Board of Judicial Conduct Husband contacted], who both know me and hate me, I'm sure any charges I would make against Judge McLellan would be sabotaged as well. The Appellate Court will see/hear plenty of evidence as to [the second trial judge]'s guilt. Item 92 of the Appellant's Brief show [sic] that both Judges broke the law (CJC Rule 2.11—disqualification) by refusing to recuse themselves for reasons associated with this case in another Case of mine involving a rental property in Bristol. . . . Both Judges were guilty of constant IMPROPRIETY.

Considering Husband's *pro se* status, the seriousness of the allegations of impropriety in this case, and the sake of judicial economy, we exercise our discretion to review Husband's allegations, despite the numerous procedural and briefing inadequacies.[10] Thus, we soldier on to address the substance of Husband's argument.[11] Typically, the standard of review for a trial court's denial of a motion for recusal is a *de novo* standard of review. Tenn. S. Ct. R. 10B, § 2.06. Because Husband did not address his motion first to the trial court, we will review the allegations contained in Husband's brief in light of the record on appeal.

Tennessee Supreme Court Rule 10, Code of Judicial Conduct Rule 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" **Bean v. Bailey,** 280 S.W.3d 798, 803 (Tenn. 2009) (quoting **State v. Austin**, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, § 11 of the Tennessee Constitution, Tennessee Code Annotated § 17-2-101, and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The

___

[10] *See* Tenn. R. App. P. 2 ("For good cause, including the interest of expediting decision upon any matter, . . . the Court of Appeals . . . may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion . . .").

[11] Our decision to "soldier on" in spite of Husband's failure to properly raise this issue should not be construed as an indication that waiver does not typically apply in this situation. We caution litigants that although we have reviewed the issue in this case, we may not be as forgiving in the future.

purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." *Austin*, 87 S.W.3d at 470 (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that she can preside over a matter fairly and impartially, the judge nevertheless should recuse herself in cases where a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). It is an objective test designed to avoid actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis*, 38 S.W.3d at 565 (citation omitted).

Adverse rulings and "the mere fact that a witness takes offense at the court's assessment of the witness" do not provide grounds for recusal, however, in light of the "adversarial nature of litigation." *Id.* Further, although "bias" and "prejudice" are terms that usually refer to "a state of mind or attitude that works to predispose a judge for or against a party. . . [n]ot every bias, partiality or prejudice merits recusal." *Alley*, 882 S.W.2d at 821. Rather, "[t]o disqualify, prejudice must be of a personal character, directed at the litigant, [and] 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" *Id.* (quoting *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo. Ct. App. 1990)).

Again, we note that this is a court of appellate jurisdiction, Tenn. Code Ann. § 16-4-108, and we typically do not consider issues and evidence that has not been presented in the trial court. Tenn. R. App. P. 13(b), (c). Unfortunately, neither party retained a court reporter, and there is no transcript of any of the proceedings. The only document in the record that purports to convey all of the evidence entered at trial is a Statement of the Evidence. Rule 24 of the Tennessee Rules of Appellate Procedure governs the preparation of the record on appeal, including the preparation of a Statement of the Evidence. According to Rule 24(c):

> **Statement of the Evidence When No Report, Recital, or Transcript Is Available.** If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. **The statement should convey a fair,**

**accurate and complete account of what transpired with respect to those issues that are the bases of appeal**. . . . Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

Tenn. R. App. P. 24(c) (emphasis added). Rule 24 also sets forth the procedure when the parties disagree as to the matters contained in the Statement of the Evidence:

**Correction or Modification of the Record.** If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. **Absent extraordinary circumstances, the determination of the trial court is conclusive.** If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

Tenn. R. App. P. 24(e) (emphasis added).

The trial judge in this case determined that Husband's Statement of the Evidence failed to comply with Rule 24(c) in that it is not " . . . accompanied by a short and plain declaration of the issues [Husband] intends to present on appeal." Further, the trial court found that his Statement of the Evidence "does not convey a fair, accurate and complete account of what transpired with respect to relevant issues that are the basis of the appeal and primarily consist of irrelevant and baseless accusations against [Wife's counsel], [the first trial judge] . . . , and the present trial judge." The trial court's decision is, consequently, conclusive absent some showing of "extraordinary circumstances." Tenn. R. App. P. 24(e). Nowhere in Husband's brief does he argue that extraordinary circumstances exist that justify disregarding the approved Statement of the Evidence. Accordingly, it is conclusive in this

-11-

case.

Turning then to the facts contained in to the Statement of the Evidence, our review reveals that it provides no support for Husband's accusations. Husband asserts in his brief that he is entitled to a new trial because the two trial judges who presided over his case made "multiple Collusive, Premeditated, Predetermined, and Fraudulent Decisions/Judgements." Other than mere assertions within his pleadings, Husband provides no evidence that any misconduct or collusion occurred, nor does he point to any citations in the appellate record to support his assertions.[12] In **Watson v. City of Jackson**, — S.W.3d — , 2014 WL 575915 (Tenn. Ct. App. 2014), we held that an appellant's "unsupported allegations of discrimination and bias, which are wholly unsupported by the verbatim transcript in this case, are insufficient to create 'a reasonable basis for questioning the judge's impartiality.'" **Id.** at \*12 (citation omitted). The appellant in **Watson** argued that the trial judge demonstrated his bias by declining to adopt her version of the Statement of the Evidence. **Id.** at \*11. However, the trial judge refused to adopt her version because it included "not only a depiction of the testimony and evidence allegedly presented, but also a record of [the appellant's] internal thoughts throughout the proceedings." In **Watson** we stated that "we are cognizant of the fact that the trial judge declined to grant any of [the appellant's] post-trial motions," but that "it is well-settled that "[a]dverse rulings by a trial judge . . . are not usually sufficient to establish bias." **Id.** at \*13 (citing **Ingram v. Sohr**, No. M2012-00782-COA-R3-CV, 2013 WL 3968155, at \*31 (Tenn. Ct. App. July 31, 2013). Like the appellant in **Watson**, Husband, focusing on the trial judge's adverse rulings in this case, makes empty assertions both in his Statement of the Evidence and in his appellate and reply briefs that simply do not indicate the impropriety suggested by Husband. "Without more, [] unsupported allegations of bias are simply too vague to require the trial court's recusal." **Bledsoe v. Bledsoe** No. W1999-01515-COA-R3-CV, 2000 WL 371196 (Tenn. Ct. App. 2000); *see, e.g.*, **Ellison v. Alley**, 902 S.W.2d 415, 418 (Tenn. Ct. App. 1995) (affirming trial court's refusal to recuse itself where appellants' motion and affidavit merely alleged that the chancellor "would likely be biased against" appellants). For instance, Husband's reply brief provides that:

> The only POSSIBLE reason for such a simplistic case and Motion for attorney's fees would be to engage in ex parte communication with the Attorney in Collusion to Premeditate and Predetermine the Ruling in favor of the Attorney. The Judge knew if he actually me [sic] to speak in that hearing and actually argue my case there would be multiple accusations of Unethical

---

[12]Husband does intermittently provide citations to the record. However, his citations to the record, when given, only provide locations of the documents he references and do not support his conclusions that the documents were fraudulent.

> Conduct against [Wife's counsel], and more important to suppress accusations of Collusion and Judicial Misconduct against the Previous [trial judge]. I have no doubt there was Collusion between the 2 Judges that [the second trial judge] would not allow anything to be said aloud about [the first trial judge].

Further, Husband provides nothing other than baseless assertions to support his allegation that Wife's attorney and the trial court engaged in an *ex parte* communication. Husband's allegations are wholly unsupported by the record and nothing in the trial court's ultimate ruling leads this Court to believe that the trial court was colluding with Wife's attorney. While we recognize that the procedural requirements for admitting evidence and hearing motions may seem daunting and arbitrary to a *pro se* litigant, the fact that the trial court nevertheless enforced general procedural and evidentiary rules is insufficient to show impropriety in this case. For example, the record suggests that Husband never requested a hearing date on several of his filed motions, nor did Husband make an offer of proof for pieces of evidence he thought to be improperly excluded by the trial judge. Thus, after a thorough review of the record, we conclude that it does not support Husband's assertions that the trial judges or Wife's attorney engaged in any inappropriate behavior. As such, there is no support for Husband's request that this Court order a new trial before a different trial judge.

Any additional issues or assignments of error that Husband purports to raise in his brief are hereby deemed waived for failure to include them within the Statement of the Issues. *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that husband waived an issue by his failure to designate it as an issue in his statement of the issues).

Last, we address Wife's request in her brief for "reasonable attorney's fees and costs associated with this appeal." Wife does not include this as an issue in her Statement of the Issues, does not substantively argue this point in the body of her brief, and does not cite to any authority to support her request. Accordingly, this issue is waived. *Forbess v. Forbess*, 370 S.W.3d 347, 357 (Tenn. Ct. App. 2011) (holding that an appellee seeking affirmative relief in the Court of Appeals must raise the issue in a Statement of the Issues section of his or her brief).

## Conclusion

Based on the foregoing, we hold that the trial court neither erred by declining to recuse itself nor by declining to grant Husband a new trial. The judgment of the Chancery

Court of Sullivan County is, therefore, affirmed, and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs are taxed to Appellant, Wayne F. Akard, and his surety.

_____
J. STEVEN STAFFORD, JUDGE