# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs August 1, 2013

## LAWRENCE D. SELLICK, ET. AL. V. GENE S. MILLER, ET. AL.

**Appeal from the Chancery Court for Cumberland County**
**No. 07CH13    Hon. Ronald Thurman, Chancellor**

**No. E2012-02058-COA-R3-CV-FILED-NOVEMBER 19, 2013**

This is the second appeal of this property dispute involving the Parties. The Sellicks initially brought suit to determine whether the Millers had obtained an easement to use Farm Road for the benefit of Parcel 5.07. The Sellicks also complained that concrete slabs encroached upon the agreed-upon Farm Road easement for the benefit of Parcel 5.02. This court held that the Millers did not have an easement to use Farm Road for the benefit of Parcel 5.07. Upon remand, the Parties reached a settlement agreement in which the Millers agreed to a removal of the portion of their driveways on Parcel 5.02 that encroached upon Farm Road. Shortly thereafter, the Millers filed a petition for contempt, alleging that the Sellicks had violated the agreement. The Sellicks responded in kind by filing their own petition for contempt. Following a hearing, the trial court entered a mutual restraining order, found Mr. Miller in contempt for failing to remove a gate as agreed, ordered Mr. Sellick to undertake repairs to the driveways owned by the Millers, and disposed of the remaining issues between the Parties. The Sellicks appeal. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and THOMAS R. FRIERSON, II, J., joined.

Kelli L. Thompson, Knoxville, Tennessee, for the appellants, Lawrence D. Sellick and Sheri A. Sellick.

C. Douglas Fields, Crossville, Tennessee, for the appellees, Gene S. Miller and Lois J. Miller.

## OPINION

## I. BACKGROUND

In 2004, Gene S. Miller and Lois J. Miller ("The Millers") purchased property, described as Parcel 5.02, in Cumberland County. Along with their parcel, they acquired the right to use the Archie Tate Farm Road ("Farm Road") for ingress and egress. The following year, Lawrence D. Sellick and Sheri A. Sellick ("The Sellicks") purchased Parcel 67.01 and Farm Road, which ran parallel to their parcel. Approximately two years later, the Millers purchased Parcel 5.07, which fronted a county road. Farm Road divided Parcel 5.07 from Parcel 5.02 and ran parallel to the side of Parcel 5.07.

The Sellicks erected a fence to prevent the Millers from accessing Farm Road from Parcel 5.07. The Millers removed the fence. The Sellicks filed suit, alleging that the Millers did not have an easement to access Farm Road from Parcel 5.07 and that concrete slabs that had been poured onto Parcel 5.02 encroached upon the existing Farm Road easement. *See Sellick v. Miller*, 301 S.W.3d 636, 638-39 (Tenn. Ct. App. 2009). In the first appeal of this case, this court found "no bases in the record to support the trial court's holding that the Millers ha[d] acquired an easement in [Farm Road] for the benefit of Parcel 5.07." *Id.* at 643. This court did not address the issue of the concrete slabs on Parcel 5.02.

Upon remand to the trial court, the Sellicks and the Millers (collectively "the Parties") reached a settlement agreement concerning the remaining property issues. The agreement provided, in pertinent part,

1. [The Millers] will have no right of access to [Farm Road] for any purpose from [Parcel 5.07].

2. The Millers agree to removal of that portion of their concrete driveways that encroach on [Farm Road] by extending past their property boundary line adjacent to the road. [The Sellicks] will contract for the removal of the excess concrete, reset a new culvert or drain tile at the level they find proper, and back fill the excavated area with soil and gravel or gravel so as to create a level and usable access to [Farm Road]. [Mr.] Sellick's workers will cut the concrete along . . . the property line to create a neat and clean severance of the unwanted concrete.

Within [60] days of the entry of this Order, [the Millers] will tender to [the Sellicks] the sum of [$2,000] for the cost of the modification. If the cost should exceed that sum, the excess costs will be born by [the Sellicks].

Further, the above work is optional . . . and if [the Sellicks] should so decide, they may keep the [$2,000] payment as damages for the encroachment and make no changes.

[The Sellicks] will elect whether or not to make the driveway modifications within [1] year from the entry of this Order, or waive the right. If [the Sellicks] elect[] to go forward with the modifications, the Millers will be notified when the work is scheduled to begin. The work will be completed in a reasonable time. If it appears or develops that [the Millers] will not have a driveable access to their home for more than [48 hours], a temporary access will be provided.

3. To avoid an increased flow and/or burden of water entering the Miller property, [the] Sellicks agree to see that the current drain tile running from the corner of the Turner-Miller properties under [Farm Road] and draining onto the Miller property identified above, shall remain in place and operational equal to its current status.

4. The [P]arties agree that the current fence along the border of the Miller property described above and [Farm Road] will be the boundary line of those two properties. The [P]arties agree that ownership of the fence is in the Millers. Because the fence is the boundary line, the [Parties] agree to install four permanent markers (posts or preferably rebar driven down to ground level) at close to equal distance intervals from the end points of the fence.

5. [The] Millers agree to remove the existing gate and close the remaining opening with fencing which will remain in place so long as the line is fenced.

Several months later, the relationship between the Parties deteriorated as they attempted to comply with the terms of the settlement agreement. The Millers had established three driveways from their property to Farm Road. The Sellicks removed the excess concrete as provided for in the agreement but made all but one driveway usable. The Sellicks also failed to create a neat and clean severance of the concrete and attempted to erect an additional fence that would have prohibited access to two of the three driveways. Lastly, the Sellicks parked an old school bus directly in front of the Miller residence between two of the driveways. The Sellicks removed several of the wheels and painted, "Miller is A A" on the side of the bus that faced the Miller residence.

The Millers filed a petition for contempt. The Millers alleged that in addition to the apparent attempts to make two of the three driveways unusable, the Sellicks had failed to

properly notify them before work began on the driveways, had failed to drive the markers into the ground, had wrongfully removed decorative landscaping and gravel, and had wrongfully parked the bus in front of their residence. The Millers sought compensation for "repairs, replacement costs, and/or value of property taken or damaged" and asked the court to assess the maximum fine and order the maximum confinement for each act of contempt.

The Sellicks denied any actions of contempt and filed a counter-petition for contempt, alleging that the Millers had unlawfully removed the court-ordered changes performed by them and had failed to remove the gate as required. The Sellicks sought compensation and asked the court to assess the maximum fine and order the maximum confinement for each act of contempt.

A hearing was held on the competing petitions for contempt. The record before this court does not contain a transcript. However, an approved statement of the evidence was filed. Mr. Miller testified that he received notice of the work to be performed by Mr. Sellick only after the work had commenced. Mr. Miller claimed that prior to Mr. Sellick's modifications, his driveways allowed the rainwater to properly flow off the road and into the ditch and culvert. He asserted that following the modifications, he and his wife were only able to use one of the three driveways and that his decorative landscaping was gradually sliding down the embankment. He likewise claimed that Mr. Sellick's workers had removed gravel and decorative rocks owned by him. He conceded that he approved the initial removal of the rocks but claimed that he did not realize Mr. Sellick's workers intended to keep the rocks. He related that after waiting for approximately one month, he reinstalled the necessary culverts and added gravel where necessary.

Mr. Miller testified that Mr. Sellick's crew attempted to build a fence along the border of his property and Farm Road. He recalled that Mrs. Miller blocked the crew from proceeding further with their work and that the crew eventually retreated. He conceded that Mr. Sellick had installed the markers as provided for in the settlement agreement but claimed that Mr. Sellick's failure to drive the markers into the ground impeded his ability to mow his lawn. He claimed that while aggravated, he was ready to put an end to the "ongoing dissension" but that shortly thereafter, Mr. Sellick and another man parked an old school bus in front of his residence. He said that someone had written "Miller is A A" on the side of the bus and had removed the wheels and battery from the bus. He stated that when he approached Mr. Sellick and the other man, Mr. Sellick retrieved a baseball bat from the bus and threatened him. He conceded that Mr. Sellick relocated the bus approximately five months later. He asserted that he was still able to see the bus from his residence.

Mr. Miller admitted that he had not removed the gate and installed fencing as required by the settlement agreement. He claimed that Mr. Sellick had impeded his ability to comply

with the agreement by installing a chain and padlock on the gate. He asserted that he would comply with the agreement if Mr. Sellick removed the chain and padlock.

Mr. Sellick testified that he mailed the notice prior to beginning his repair work. He believed the repairs he made to the driveways were adequate and better than what previously existed. He considered anything placed in the easement area by the Millers to be a trespass. He claimed that the Millers had "reinstalled their driveways and re-excavated the drainage to suit their own needs and put it right back to the way it was that caused a lawsuit." He asserted that the Millers never communicated their dissatisfaction with the repairs and that Mr. Miller even directed his crew to remove the rocks from the embankment. He stated that his attempts to erect fencing that divided the property line from the easement were rebuffed.

Mr. Sellick testified that Mr. Miller had failed to remove the gate as required and that Mr. Miller had also placed pallets at the edge of the Miller property in an attempt to create an unattractive appearance. He conceded that he parked the school bus in front of the Miller residence and that his friend wrote the offending statement on the side of the bus. He asserted that the bus was parked on his property. He also admitted that he carried a baseball bat with him when he parked the bus because he was fearful of Mr. Miller. He insisted that he relocated the bus as a show of his good faith.

Mr. Winchester, a licensed contractor, testified that Mr. Sellick hired him to remove the excess concrete from the driveways, remove the culverts, excavate the drainage ditch, and reinstall another culvert. He conceded that his crew broke some of the corners off the concrete slabs but claimed that he repaired the broken corners. He also claimed that he removed the rocks along the embankment with Mr. Miller's permission. He stated that he abandoned the fencing project when the Millers blocked the area with a vehicle.

Following the presentation of the above evidence, the trial court entered a mutual restraining order between Mr. Sellick and Mr. Miller, held Mr. Miller in civil contempt for failing to remove the gate as contemplated in the settlement agreement, directed Mr. Sellick to repair the concrete or submit $2,500 to Mr. Miller to complete the repair, prohibited Mr. Sellick from erecting a fence in front of the Miller residence, and held that neither party was in criminal contempt. The court also stated that Mr. Miller was free to drive the property line markers into the ground and suggested that Mr. Miller should also move the offending pallets as an act of good faith. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issue raised on appeal by the Sellicks as follows:

A. Whether the trial court erred in declining to hold the Millers in contempt for their placement of and number of driveways.

The Millers also raised an issue for our consideration that we restate as follows:

B. Whether the Millers are entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

Findings of civil contempt are reviewed under an abuse of discretion standard. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004). Reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). We review the trial court's factual findings of civil contempt with a presumption of correctness unless the evidence preponderates otherwise pursuant to the standard contained in Rule 13(d) of the Tennessee Rules of Appellate Procedure. *Konvalinka*, 249 S.W.3d at 357.

## IV. DISCUSSION

### A.

The Sellicks assert that the three separate driveways on Parcel 5.02 are an unreasonable use of the easement and that the Millers should have been held in contempt for returning the driveway accesses to their original form. They contend that the trial court erroneously neglected to make any findings concerning the reasonableness of the use of the easement. They ask this court to find the Millers in contempt and to order the Millers to limit the width of the access to Farm Road to 20 feet. The Millers respond that the trial court failed to address the issue of reasonableness because it was not an issue before the court. They claim that their attempt to repair the damage caused by the Sellicks was in compliance with the settlement agreement. They alternatively respond that their driveways are a reasonable use of the express easement that they received when they purchased Parcel 5.02.

"Civil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce his or her rights under the order that has been violated." *Reed v. Hamilton*, 39 S.W.3d 115, 117-18 (Tenn. Ct. App. 2000). "Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of his or her rights." *Id.* at 118. In general, the Tennessee Supreme Court has enumerated four essential elements of civil contempt claims based upon an alleged disobedience of a court order:

(1) the order alleged to have been violated must be "lawful;"

(2) the order alleged to have been violated must be clear, specific, and unambiguous;

(3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and

(4) the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354-55.

The settlement agreement at issue in this case merely allowed the Sellicks to remove the concrete that encroached upon Farm Road. The Sellicks claim that the agreement also allowed them to decrease the width of the driveways because they were instructed to "reset a new culvert or drain tile at the *level* they find proper" and to "back fill the excavated area with soil and gravel or gravel so as to create a level and usable *access*" to Farm Road. (Emphasis added). Contrary to their argument, the agreement did not address the number of driveways or limit access in any manner other than to ensure that the concrete slabs did not encroach upon Farm Road and that any access to Farm Road was level and usable. Indeed, the Millers had merely agreed to the removal of the "portion of their concrete *driveways*" that encroached on Farm Road. (Emphasis added). To argue that the settlement agreement provided for the destruction of two of the three driveways is disingenuous.

The reasonableness of the number of driveways was simply not a proper issue before the trial court; therefore, it is also not a proper issue before this court. Appellate courts "cannot exercise original jurisdiction" and act as the "trier-of-fact." *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005) (citations omitted); *see also Pierce v. Tharp*, 461 S.W.2d 950, 954 (Tenn. 1970) (rejecting appellants' "novel" request to adduce proof in support of their motion). Indeed, the jurisdiction of this court is "appellate only." Tenn. Code Ann. § 16-4-108. Having reviewed the settlement agreement, we conclude that the Millers did not disobey or otherwise resist the settlement agreement as alleged by the Sellicks. Accordingly,

we further conclude that the trial court did not abuse its discretion in declining to hold the Millers in contempt as requested by the Sellicks.

B.

The Millers request attorney fees on appeal. Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney fees when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny the request for attorney fees on appeal.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellants, Lawrence D. Sellick and Sheri A. Sellick.

_____
JOHN W. McCLARTY, JUDGE

-8-