# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 20, 2016 Session

## AMANDA GILREATH, ET AL. v. CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY, ET AL.

### Appeal from the Circuit Court for Hamilton County
### No. 12C219    Ward Jeffrey Hollingsworth, Judge

### No. E2015-02058-COA-R3-CV-FILED-JUNE 15, 2016

This is a medical malpractice action[1] in which the plaintiffs filed suit against the defendant hospital. The defendant hospital requested summary judgment. The trial court granted summary judgment and dismissed the action. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. and D. MICHAEL SWINEY, C.J., joined.

Jimmy W. Bilbo and Brent McIntosh, Cleveland, Tennessee, for the appellants, Amanda Gilreath and Jason Gilreath.

Arthur P. Brock and Drew H. Reynolds, Chattanooga, Tennessee, for the appellee, Chattanooga-Hamilton County Hospital Authority, individually and d/b/a Erlanger Health System.

---

[1] Tennessee Code Annotated section 29-26-101 now defines most all cases occurring in a medical context as "health care liability actions." The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based. . . ." Acts 2011, ch. 510, § 8. Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code. Acts 2012, ch. 798. The provisions of the revised statute do not apply to this action, as the injuries at issue here accrued before October 1, 2011.

**OPINION**

## I. BACKGROUND

On February 1, 2011, Amanda Gilreath presented to Chattanooga-Hamilton County Hospital Authority d/b/a Erlanger Health System ("Erlanger") in Chattanooga, Tennessee, complaining of low back pain, an inability to urinate, and numbness of her lower extremities. She advised the medical providers, including the nurses and emergency room physicians, that she had received a diagnosis of cauda equina syndrome[2] from her chiropractor. Anuj Parikh, M.D. and Jared Shell, M.D., provided treatment but failed to recognize her symptoms as suggestive of cauda equina syndrome. She was discharged from the hospital with instruction to increase her fluid consumption to treat a possible impacted kidney stone. Her condition worsened, causing her to experience loss of bladder and bowel function and the ability to walk. She was later diagnosed with cauda equina syndrome by physicians practicing in a different hospital.

On February 1, 2012, Mrs. Gilreath and her husband, Jason Gilreath, (collectively "Plaintiffs") filed suit against Erlanger, a governmental entity hospital. Plaintiffs alleged that the failure to timely and adequately diagnose Mrs. Gilreath's condition caused her further injury. They claimed (1) that Erlanger was liable for the actions of Drs. Parikh and Shell pursuant to the doctrine of respondeat superior; (2) that Erlanger breached its contract, whether express or implied, to provide adequate treatment, instruments, and facilities fit for the intended use; and (3) that she would not have been injured absent Erlanger's negligence, thereby supporting the application of the doctrine of res ipsa loquitur. Erlanger responded by denying wrongdoing and asserting that the action was governed by the Tennessee Government Tort Liability Act ("the GTLA"), codified at Tennessee Code Annotated section 29-20-101, et seq. Erlanger claimed that pursuant to the GTLA, it was not "subject to vicarious liability for the alleged acts or omissions of independent contractor physicians under the doctrines of actual agency, apparent or ostensible agency, or respondeat superior."

Plaintiffs filed an expert witness disclosure, identifying Kenneth Stein, M.D., a physician and professor of emergency medicine at the St. Louis University Health Sciences Center, as an expert witness. The disclosure provided, in pertinent part, as follows:

---

[2] Cauda equina syndrome is defined as "a group of symptoms that are caused by compression of the cauda equina and include pain in the lower back and legs, weakness and numbness in the groin, buttocks and legs, and impaired functioning of the bladder and bowel." Merriam-Webster Online Dictionary (2016) (www.merriamwebster.com (derived from Merriam-Webster's Collegiate Dictionary 11th ed.))).

[Dr. Stein] is expected to testify that he is familiar with the recognized standard of acceptable professional practice in the profession and the specialty thereof that the defendants practice in the community of [Chattanooga and in] a similar community at the time the injury to [Mrs. Gilreath] occurred and at the time the wrongful action occurred. [Dr. Stein] is familiar with the recognized standard of acceptable professional practice expected of emergency room physicians [in Chattanooga] and in similar communities at the time the negligence occurred. [Dr. Stein] is further expected to testify that . . . the defendants acted with less than or failed to act with ordinary and reasonable care in accordance with such standard(s) in the profession and in the specialty thereof of the defendants in [Chattanooga] and in a similar community at the time of the wrongful action and injury to [Mrs. Gilreath]. [Dr. Stein] is also expected to testify that as a direct and proximate result of the defendants' negligent act or omission, [Mrs. Gilreath] suffered injuries which would not otherwise have occurred.

Plaintiffs further advised Erlanger that Dr. Stein would specifically testify that Mrs. Gilreath's symptoms were suggestive of cauda equina syndrome and that the failure to perform a Magnetic Resonance Imaging ("MRI") or other diagnostic test was below the recognized standard of care.

Erlanger responded with its own expert witness disclosure, identifying Richard Serra, M.D. and James Killeffer, M.D. FAANS as potential expert witnesses. Erlanger advised Plaintiff that Dr. Serra was expected to testify that Drs. Parikh and Shell complied with the applicable standard of care. Specifically, Dr. Serra was expected to testify that the emergency room physicians did not breach the applicable standard of care by failing to perform an MRI or other diagnostic test, by failing to diagnose and provide treatment for cauda equina syndrome, or by discharging Mrs. Gilreath. Dr. Killeffer was likewise expected to testify that the alleged failure to properly diagnose and provide treatment for cauda equina syndrome "did not significantly change Mrs. Gilreath's outcome" and that the decision to discharge her "did not cause her to suffer injuries that would not otherwise have occurred." Dr. Killeffer was further expected to testify that "it would be mere speculation to state that Mrs. Gilreath would have undergone a less protracted course of recovery if she had been diagnosed with cauda equina syndrome."

Erlanger filed two motions for summary judgment, one on August 19, 2014, and another on September 10, 2014. Erlanger argued that summary judgment on the breach of contract claim was warranted because the evidence was insufficient to establish the claim by expert testimony. Erlanger argued that Dr. Stein was not familiar with the standard of care applicable to Erlanger and that he was not expected to testify that

Erlanger failed to provide safe facilities, instruments, or treatment or that Mrs. Gilreath sustained her injuries as a result of such failure. Erlanger further argued that

> [Dr. Stein] should be precluded from testifying as to the standard of care applicable to Erlanger or offering opinions relating thereto because there is no indication that he is sufficiently familiar with the standard of care applicable to Erlanger or that he would be able to give relevant testimony.

Relative to the vicarious liability claims, Erlanger asserted that summary judgment was warranted because Drs. Parikh and Shell were not employees of Erlanger within the meaning of Tennessee Code Annotated section 29-20-107(a).[3]

Meanwhile, the parties continued to engage in discovery. Dr. Stein was deposed on September 25, 2014. His deposition testimony exceeded the parameters set forth in the expert witness disclosure. Specifically, he offered the following three criticisms of the care and treatment received by Mrs. Gilreath: (1) failure to order an MRI or other diagnostic test; (2) failure to order a neurological or neurosurgical consult; and (3) a potential failure of the hospital personnel to inform the treating physicians of a 90 cc urine output upon catheterization. Erlanger moved to exclude the undisclosed opinion regarding the alleged negligence of hospital personnel. The court entered an order in which it permitted Erlanger to pursue additional discovery but offered Plaintiffs the option of withdrawing the testimony. Plaintiffs filed a motion for new trial and/or a motion to alter or amend the order. The court never issued a ruling on this motion.

On May 5, 2015, Plaintiffs responded to the motions for partial summary judgment. Relative to the breach of contract claim, Plaintiffs asserted that Dr. Stein was

---

[3](a) Any person who is not an elected or appointed official or a member of a board, agency or commission shall not be considered an employee of a governmental entity for purposes of this chapter unless the court specifically finds that all of the following elements exist:

    (1)    The governmental entity itself selected and engaged the person in question to perform services;

    (2)    The governmental entity itself is liable for the payment of compensation for the performance of such services and the person receives all of such person's compensation directly from the payroll department of the governmental entity in question;

    (3)    The person receives the same benefits as all other employees of the governmental entity in question including retirement benefits and the eligibility to participate in insurance programs;

    (4)    The person acts under the control and direction of the governmental entity not only as to the result to be accomplished but as to the means and details by which the result is accomplished; and

    (5)    The person is entitled to the same job protection system and rules, such as civil service or grievance procedures, as are other persons employed by the governmental entity in question.

qualified to render an expert opinion and testify as to the applicable standard of care as applied to Erlanger and that they had presented sufficient evidence to establish their claims. They also attached portions of Dr. Stein's deposition testimony and an affidavit in which Dr. Stein recounted his deposition testimony and reaffirmed the statements in the disclosure. He provided that he was familiar with the applicable standard of care as applied to Erlanger and asserted that Erlanger breached its duty to provide reasonable care by failing to provide a safe facility and treatment. Relative to the vicarious liability claims, Plaintiffs again asserted that Erlanger was liable for the actions of its emergency room physicians pursuant to the doctrine of respondeat superior *and* the loaned servant doctrine. They further asserted that Erlanger was likewise liable for the actions of its other employees or agents, including the nurses that provided treatment to Mrs. Gilreath.

Erlanger responded that the proffered evidence was insufficient to survive its properly supported motions for summary judgment. Erlanger provided that neither the expert witness disclosure nor Dr. Stein's deposition testimony established that Dr. Stein was familiar with the applicable standard of care as applied to Erlanger, a hospital or hospital emergency room. Erlanger further asserted that an independent duty to provide reasonable care may not be imposed because a hospital may only act through its agents. Erlanger claimed that the additional, undisclosed, and unformulated criticism of the hospital personnel were not included in the expert witness disclosure.

Following a hearing, the court granted summary judgment and dismissed the suit with prejudice. Relative to Plaintiffs' claim for breach of contract, the court found that Plaintiffs failed to present "sufficient proof to establish that Erlanger, as a hospital, was in any way negligent." The court also found that there was "no clear indication that Dr. Stein is familiar with the standard of care for a hospital such as Erlanger." Relative to the vicarious liability claim, the court held that Erlanger could not be held liable for the negligence of the treating physicians pursuant to the GTLA when it was undisputed that the treating physicians were not hospital employees. The court continued,

> [Tennessee Code Annotated section 29-20-205] removes governmental immunity only for the negligence of employees of a governmental agency such as Erlanger. Nowhere does the act remove immunity for the acts of agents. Therefore, even if [Plaintiffs] raised an issue of fact that the doctors may have been [an] agent, Erlanger's immunity from suit remains.

The court addressed Plaintiffs' claim of negligence committed by the hospital personnel as follows:

> There is also some reference in [Plaintiffs'] response to Erlanger's motions that nurses or other healthcare providers may be liable for *some sort of*

*negligence*. [Plaintiffs] go on to argue that Erlanger may be vicariously liable for the alleged negligence of those unidentified nurses. - - The [c]ourt could not find in the materials submitted in regard to these motions, one mention of a specific nurse or any act or omission by any nurse or other healthcare provider at Erlanger in regard to [Mrs. Gilreath]. The only argument [Plaintiffs] make is that there may be claims that someone, at some time, may have done something wrong. [Tennessee Code Annotated section] 20-16-101(b) does not allow [Plaintiffs] to hope that something may turn up at some time to defeat the summary judgment motion.

(Emphasis added.).

Plaintiffs filed a motion to alter or amend the court's judgment, alleging that they had presented sufficient evidence to withstand summary judgment. They further asserted that the court failed to properly consider the application of the doctrine of res ipsa loquitur and whether Erlanger could be held liable for the actions of its nurses or other employees, not just its treating physicians. The trial court denied the motion, finding as follows:

The sole [d]efendant in this case is Erlanger. That is, without a doubt, a [medical malpractice] case. While the claim may be couched in terms of contract, the question is whether [Plaintiffs] have produced sufficient evidence to sustain a claim that Erlanger failed to meet the standard of care required of a hospital. The contract Erlanger had with [Mrs. Gilreath] in this case is to provide care and services that comport with the standard of care. The evidence [Plaintiffs] are required to produce is expert testimony.

As noted in the [c]ourt's previous order, Dr. Stein's expert disclosure states he is familiar with the standard of care applicable to emergency room physicians. The physicians are not defendants. Nowhere in the designation does Dr. Stein offer an opinion that Erlanger fell below the standard of care for hospitals. As noted previously, there is some vague reference that some unknown nurse may have failed to notify the emergency room physicians. Dr. Stein admits he added those "opinions" the night before or the day of his deposition, but there is no evidence that point[s] to Erlanger.

Therefore, the Plaintiffs' motion to alter or amend is Denied.

This timely appeal followed.

- 6 -

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether the order should be vacated and the case remanded based upon the court's failure to address all issues and include a proper recitation of the legal and factual grounds supporting its decision.

B.    Whether the court erred in granting summary judgment and dismissing the action with prejudice.

## III.    STANDARD OF REVIEW

The appropriate summary judgment standard to be applied is as follows:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (emphasis in original). When a properly supported motion is made, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in [Rule 56 of the Tennessee Rules of Civil Procedure], set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue for trial.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citations omitted). "In doing so, we make a fresh determination of whether the requirements of [Rule 56] have been satisfied." *Id.* (citations omitted). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

## IV.   DISCUSSION

### A.

As a threshold issue, Plaintiffs ask this court to vacate the grant of summary judgment and remand this case for reconsideration because the order appealed from did not contain the legal grounds supporting the grant of summary judgment on each issue raised.  Rule 56.04 of the Tennessee Rules of Civil Procedure provides, in pertinent part,

> The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling.

We agree with Plaintiffs that the order granting summary judgment did not specifically address each doctrine or theory raised by Plaintiffs.

> In such cases, our Supreme Court offered the following guidance,

> The changes to Tenn. R. Civ. P. 56.04 were intended to address two concerns.  First, they reflect the growing awareness of both the Advisory Commission and this Court that explanations of the basis for judicial decisions promote respect for and acceptance of not only the particular decision but also for the legal system.  Second, skeletal orders containing no explanation of the reasons for granting the summary judgment were complicating the ability of the appellate courts to review the trial court's decision. *See, e.g., Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000) (noting that skeletal orders lacking a statement of grounds required appellate courts to "perform the equivalent of an archeological dig [to] endeavor to reconstruct the probable basis for the [trial] court's decision") (quoting *Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998)).

> Despite the amendments to Tenn. R. Civ. P. 56.04 making the statement of grounds mandatory, the Court of Appeals has been reticent to vacate summary judgment orders that plainly do not comply with Tenn. R. Civ. P. 56.04 and to remand them to the trial court for further consideration.  The court continues to conduct archeological digs and to review summary judgment orders when the basis for the trial court's decision can be readily gleaned from the record and to remand the case only when their practiced eyes cannot discern the grounds for the trial court's decision.

We readily agree that judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ. P. 56.04 in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision. However, in the future, the resolution of issues relating to a trial court's compliance or lack of compliance with Tenn. R. Civ. P. 56.04 should also take into consideration the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained and is the product of the trial court's independent judgment.

*Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 313-14 (Tenn. 2014).

Plaintiffs initially alleged in their complaint that (1) that Erlanger was liable for the actions of Drs. Parikh and Shell pursuant to the doctrine of respondeat superior; (2) that Erlanger breached its contract, whether express or implied, to provide adequate treatment, instruments, and facilities fit for the intended use; and (3) that Mrs. Gilreath would not have been injured absent Erlanger's negligence, thereby supporting the application of the doctrine of res ipsa loquitur. The record reflects that the complaint *and* responsive pleadings allege specific acts of negligence, namely the failure to order an MRI or other diagnostic test and a neurological or neurosurgical consult, in support of their general request for recovery. These allegations sound in medical malpractice, not breach of contract or ordinary negligence and are governed by the Tennessee Medical Malpractice Act ("TMMA"). *Estate of French v. Stratford House*, 333 S.W.3d 546, 556 (Tenn. 2011), *superseded by statute*, Tennessee Civil Justice Act of 2011, ch. 510, 2011 Tenn. Pub Acts 1505 (codified at Tenn. Code Ann. § 29-26-101 et seq. (Supp. 2011)), *as recognized in Ellithorpe v. Weismark*, 479 S.W.3d 818, 820 (Tenn. 2015). In such cases, the claimant bears the burden of proving the negligence of the defendant by a preponderance of the evidence. Tenn. Code Ann. § 29-26-115(d). The court in this case ultimately granted summary judgment after finding that Erlanger could not be held liable for the actions of Drs. Parikh and Shell and that Plaintiffs failed to present "sufficient proof to establish that Erlanger, as a hospital, was in any way negligent." With these considerations in mind, we hold that the absence of stated grounds on each issue does not hamper our review when the decision was adequately explained and was the product of the court's independent judgment. We deny the request to vacate the order and remand the case for reconsideration.

B.

Plaintiffs first allege that the court erred in granting summary judgment because Erlanger is vicariously liable for the injuries caused by Drs. Parikh and Shell. As a governmental entity hospital, any suit filed against Erlanger is subject to the provisions of

the GTLA. "The GTLA provides general immunity to [a] governmental entit[y] causing injury to an individual during the exercise or discharge of [its] duties." *Cunningham v. Williamson Cnty. Hosp. Dist.*, 405 S.W.3d 41, 43 (Tenn. 2013) (citing Tenn. Code Ann. § 29-20-201(a)). Immunity may be removed when the injury is caused by the negligence of a government employee acting within the scope of his or her employment. Tenn. Code Ann. § 29-20-205. However, "any claim for damages must be brought in strict compliance with the terms" of the GTLA. Tenn. Code Ann. § 29-20-201(c).

Plaintiffs concede that neither Dr. Parikh nor Dr. Shell is a governmental employee within the meaning of the GTLA. Citing *Parker v. Vanderbilt University*, 767 S.W.2d 412 (Tenn. 1988), Plaintiffs argue that Erlanger remains liable for the acts of its agents pursuant to the loaned servant doctrine. The doctrine provides that "[a]n employee of one employer may become the servant of another and shift the liability for his negligent acts to the second employer." *Parker*, 767 S.W.2d at 416. Plaintiffs allege that liability may be imputed because the treating physicians were servants of Erlanger.

The facts presented in *Parker* are inapposite to the facts presented in this case. In *Parker*, this court considered whether Vanderbilt University ("Vanderbilt") could be held liable for the negligence of its physicians who provided treatment at Nashville General Hospital ("Nashville General") pursuant to a contract. *Id.* at 413. The plaintiffs argued that they were entitled to recover from Vanderbilt because Tennessee Code Annotated section 29-26-107(c)[4] prevented application of the loaned servant doctrine. *Id.* at 417. This court held that the statute did not operate to bar application of the doctrine when the purpose of the statute "is to prevent the loaned servants from being immune", not to prevent the doctors from becoming loaned servants of the hospital. *Id.* We likewise held that any negligence committed by the physicians could not be imputed to Vanderbilt. *Id.* We did not address whether Nashville General, a governmental entity hospital, could be held liable for the actions of the physicians as loaned servants or whether the physicians were employed by Nashville General within the meaning of the GTLA.

The GTLA establishes that a governmental entity may be held liable for the negligent acts of its employees. The GTLA further provides that a person "shall not be considered an employee of a governmental entity" unless certain requirements are met. Tenn. Code Ann. § 29-20-107(a). Plaintiffs concede that these requirements were not met. Accordingly, we affirm the court's summary dismissal of this claim.

---

[4] "No governmental entity may extend the immunity granted by this chapter to independent contractors or other persons or entities by contract, agreement or other means, nor shall the doctrine of borrowed servants operate to make any person a governmental entity employee for the purpose of immunity who does not otherwise meet all of the elements set out in this section."

Plaintiffs next allege that the court erred in granting summary judgment because Erlanger is individually liable for Mrs. Gilreath's injuries. They offer three arguments in support of their claim on appeal, (1) that Mrs. Gilreath would not have been injured absent Erlanger's negligence, thereby supporting application of the doctrine of res ipsa loquitur; (2) that Erlanger failed to exercise reasonable care in discharging its duties, thereby supporting application of the doctrine of corporate negligence; and (3) that Erlanger committed malpractice by failing to provide adequate treatment, instruments, and facilities fit for the intended use. We shall address each argument in turn.

The TMMA governs the applicability of the doctrine of res ipsa loquitur in medical malpractice cases and provides that:

> In a malpractice action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

Tenn. Code Ann. § 29-26-115(c) (2012). Historically, res ipsa loquitur, defined, in pertinent part, by Black's Law Dictionary, 10th ed., as "the thing speaks for itself," was reserved for cases where the act was so obviously negligent that a layperson's common knowledge allowed an inference of negligence. *German v. Nichopoulos*, 577 S.W.2d 197, 202 (Tenn. Ct. App. 1978), *overruled by Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86 (Tenn. 1999). Our Supreme Court later expanded the reach of the doctrine to include cases that concern complex medical issues that are beyond the layperson's general understanding and that require expert testimony to prove causation, the standard of care, and/or that the injury does not ordinarily occur in the absence of negligence. *Seavers*, 9 S.W.3d at 97. Application of the doctrine is precluded in cases where evidence of a specific act of negligence is introduced at trial. *Hughes v. Hastings*, 469 S.W.2d 378, 397 (Tenn. 1971).

The plaintiffs in this case alleged specific acts of negligence in support of their claim, namely the failure to order an MRI or other diagnostic test or a consult and Erlanger's failure to provide adequate treatment, instruments, and facilities fit for the intended use. Accordingly, application of the doctrine of res ipsa loquitur is precluded.

Plaintiffs failed to argue for the application of the doctrine of corporate negligence at the trial court level. While review of a grant or denial of summary judgment is de novo *without* a presumption of correctness, appellate courts "cannot exercise original jurisdiction" and act as the "trier-of-fact." *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn.

2005) (citations omitted); *see also Pierce v. Tharp*, 461 S.W.2d 950, 954 (Tenn. 1970) (rejecting appellants' "novel" request to adduce proof in support of their motion). Additionally, a party may not offer a new issue for the first time on appeal. *See Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W .2d 457, 466-67 (Tenn. Ct. App. 1984)). "The jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver." *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted). Despite the potential for waiver, consideration of the doctrine is unnecessary to address the remaining claim of direct negligence against Erlanger. *See Barkes v. River Park Hosp., Inc.*, 328 S.W.3d 829, 832 (Tenn. 2010) (declining to adopt the doctrine and stating that consideration of the doctrine was unnecessary to address the direct negligence claim against a hospital).

The GTLA has been interpreted to permit the filing of a direct negligence claim against a governmental entity. *See generally Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 83-86 (Tenn. 2001) (holding a governmental entity nursing home liable for its direct negligence in failing to take reasonable precautions to protect its elderly residents), *Pendleton v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2004-01910-COA-R3-CV, 2005 WL 2138240, at *3-4 (Tenn. Ct. App. Sept. 1, 2005) (holding that immunity may be removed based upon a separate claim of negligence against a governmental entity in a case arising from an intentional tort committed by an employee). The plaintiffs in this case alleged that Erlanger committed medical malpractice. To survive summary judgment, Plaintiffs were required to set forth sufficient facts establishing the following three elements by expert testimony:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). *See Barkes*, 328 S.W.3d at 833 ("Tennessee law clearly recognizes that hospitals owe a duty of reasonable care to their patients and may be directly liable to patients independent of any liability based on the hospital's employees or agents.").

Other than conclusory references to Erlanger's failure to provide adequate treatment, instruments, and facilities fit for the intended use, Plaintiffs did not set forth any specific facts to establish that Erlanger acted with less than or failed to act with reasonable care or that such failure proximately caused Mrs. Gilreath's injuries. To the contrary, Plaintiffs repeatedly asserted that Mrs. Gilreath's injuries were proximately caused by physician omissions, namely the failure to order a neurological or neurosurgical consult or an MRI or other diagnostic test. Plaintiffs later claimed that the hospital personnel's failure to inform the physicians of a 90 cc urine output upon catheterization may have been a contributing factor to Mrs. Gilreath's failure to receive proper treatment. However, these allegations do not establish Erlanger's direct negligence as a hospital. *See Barkes*, 328 S.W.3d at 834 (holding the hospital directly liable for its "failure to inform the emergency room health care providers of its policies and its failure to effectively implement a system of oversight and enforcement of its policies"). With all of the above considerations in mind, we affirm the grant of summary judgment and the dismissal of the action in its entirety.

## V.    CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellants, Amanda Gilreath and Jason Gilreath.

_____
JOHN W. McCLARTY, JUDGE

- 13 -