IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 28, 2017 Session

IN RE BRYSON F.[1]

**Appeal from the Circuit Court for Hamblen County**
**No. 14CV-200     Alex E. Pearson, Judge**

_____

**No. E2016-01303-COA-R3-PT**

_____

This is a termination of parental rights case in which the mother and stepfather sought termination of the biological father's parental rights to his child. The trial court found that clear and convincing evidence existed to support the termination on the statutory ground of abandonment for failure to remit child support. The court further found that termination was in the best interest of the child. The father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and W. NEAL MCBRAYER, J., joined.

Matt E. Miller, Jefferson City, Tennessee, for the appellant, John Lee M.

Crystal G. Jessee, Greeneville, Tennessee, for the appellee, Charity Michelle H. and Jason Robert H.

**OPINION**

**I.     BACKGROUND**

Bryson F. was born to Charity Michelle H. and John Lee M. (individually "Mother" or "Father" and collectively "the Parents") in June 2011. Mother was married to another man at the time of the Child's birth. Mother later obtained a divorce but never married Father, who was confirmed as the biological father through a DNA test.

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

The Child primarily resided with Mother as a result of Father's condition of cerebral palsy, which caused physical and cognitive impairment. The Parents lived in different apartments in the same apartment complex in Bulls Gap, Tennessee for several years. However, Father visited the Child on a limited basis usually with supervision based upon Mother's concern that he was incapable of caring for the Child for an extended period of time. The Child often called for Mother while visiting with Father, and at times, Father requested assistance because he could no longer care for the Child. Father also left town on occasion and went weeks without visiting the Child.

Father was unable to maintain regular employment based upon his physical and cognitive limitations. He received $294 in disability income, $459 in supplemental Social Security income, and $45 in food stamps per month. He also obtained limited periods of employment on occasion. His mother managed his financial affairs and was responsible for providing Father with a debit card to purchase his incidentals after his bills were paid. Throughout the Child's lifetime, Father never remitted child support and only occasionally provided items for the Child while in his care.

The relationship between the Parents eventually began to deteriorate. In November 2012, Father filed a petition to establish paternity and for entry of a parenting plan. He also filed a motion in which he sought to prevent Mother's attempt to relocate with the Child. The Parents later entered into an agreed order, providing for his visitation. Father never pursued his initial attempt to establish paternity.

Mother relocated to Newport, Tennessee in April 2013, causing difficulty in maintaining the terms of the visitation agreement because Father was unable to drive. Mother eventually returned to Bulls Gap, Tennessee. However, visitation between the Child and Father remained sporadic, leading Father to file a motion for contempt in September 2014 for failure to follow the visitation schedule.

In November 2014, Mother married Jason Robert H. ("Stepfather"), who had already assumed a large role in the Child's life. On December 12, 2014, Mother and Stepfather (collectively "the Petitioners") filed a petition to terminate Father's parental rights. The Petitioners alleged that Father had abandoned the Child by failing to visit and by failing to remit child support and that he had also failed to legitimate the Child. The case proceeded to a hearing during which counsel argued that termination was warranted given Father's failure to visit and remit support. Counsel did not pursue Father's failure to legitimate the Child as a ground for termination at the hearing.

As pertinent to this appeal, Mother testified that Father failed to visit with the Child for the four months preceding the filing of the termination petition, namely August through December 2014. She claimed that he last visited the Child in June 2014 and that

he never requested visitation after June 2014. She further claimed that he was not home when she attempted to bring the Child for visitation. She stated his visitation was sporadic prior to the four months preceding the filing of the petition. She claimed that he also went weeks at a time without visitation.

Mother acknowledged that Father filed a petition to legitimate the Child in November 2012. She asserted that he never pursued the petition because they entered into an agreed visitation schedule where the Child stayed with Father for a few hours several days a week. She claimed that the Child was often hungry and had not been changed on a regular basis while with Father. She also observed trash throughout the apartment, including beer bottles. She noted that a knife had been left on the coffee table on one occasion. She stated that she advised Father of her concerns and that they later agreed to limit visitation to one day per week. She recalled that he often asked for assistance or ended the visit early even after his visitation decreased to one day per week.

Mother testified that after she moved to Newport, Father refused her request for gas money to facilitate visitation on at least one occasion. She claimed that he called her repeatedly in May 2014 when she refused to leave a family function early to bring the Child to Father for visitation. She claimed that she continued to facilitate visitation even after their disagreement in May 2014. She described an incident in June 2014, where she arrived with the Child only to find Father with two unclothed women in an unclean apartment. She asserted that she cleaned the apartment and waited for the women to disperse before leaving the Child. She stated that she found his apartment unclean yet again when she returned for the Child's second and last visitation in June 2014. She recalled that Father called her 45 minutes later and asked her to retrieve the Child. She provided that Father was not home when she attempted to facilitate visitation again in June 2014. She agreed that she had not attempted to facilitate visitation since June 2014.

Mother testified that Father never remitted child support, despite his receipt of disability and Social Security benefits and occasional periods of employment. She claimed that he and his mother also rebuffed her attempt to secure disability benefits for the Child based upon his disability. She stated that he never provided for the Child, with the exception of one pack of diapers and two packs of wipes in June 2012. She asserted that he denied her repetitive requests for financial assistance and advised her that the Child was her responsibility, not his. She agreed that Father provided some items for the Child during visitation but recalled that she also provided snacks and other items.

Mother described a loving relationship between Stepfather and the Child and claimed that Stepfather also financially provides for the Child.

Charity Miles, a family friend and an employee at a local grocery store, testified that Father used to frequent the store on a weekly basis to purchase beer and cigarettes but that his visits had decreased in the last year. She recalled that he was employed at a bar at one time and also left business cards for his personal business at another time.

Stepfather testified that he too is employed at a local grocery store. He recalled that Father frequented the store once or twice per week but his trips to the store had since declined. He claimed that Father usually purchased beer and cigarettes.

Stepfather claimed that he has cared for the Child since March 2013. He stated that he loves the Child and is willing to adopt him. He confirmed Mother's claims that Father never financially provided for the Child and that Father refused her requests for financial assistance. He provided that Mother attempted to facilitate visitation between the Child and Father and never refused visitation. He recalled retrieving the Child early from visitation on at least three occasions.

Winnie H., the maternal grandmother, testified that she served as the primary babysitter for the Child. She claimed that Father refused her request to reimburse her for formula and diapers. She recalled that Father advised her that it was not his responsibility. She claimed that Father received income from odd jobs in addition to his disability income.

Father testified that his disability prevents him from operating a car, managing his finances, and maintaining employment. He claimed that Mother scheduled visits only at her convenience and refused his requests for additional visitation, prompting him to hire legal representation to establish visitation through the court system. He alleged that he was still awaiting a date for mediation and that he filed a motion for contempt for failure to abide by the visitation agreement on September 16, 2014.

Father described a loving relationship between himself, the Child, and his extended family. He claimed that he was heartbroken because he had not seen the Child in two years. He asserted that he last attempted to arrange visitation in May 2014. He recalled that Mother called the police, who advised him not to contact Mother.

Father claimed that Mother brought the Child for visitation without first providing notice. He explained that he would have cleaned his apartment and excused his company if he had been made aware that the Child would be available for visitation. He claimed that he was required to maintain a tidy apartment because his apartment complex routinely inspected his apartment. He asserted that he provided appropriate supervision and hygiene care during visitation and alleged that the Child often arrived with a wet diaper and dirty clothes.

Father asserted that he purchased clothing, food, and diapers for the Child while in his care and that his mother also contributed to the purchase of these items. He recalled purchasing gifts for the Child for birthdays and holidays. He identified two receipts, one dated November 29, 2012, and another dated December 6, 2012, establishing his purchase of several items for the Child. He provided that he had never been advised to provide child support and that he was incapable of writing his own checks. He claimed that Mother never asked for support and that he would have ensured payment if he had been made aware of a duty to remit child support. He further claimed that he also could not provide financial assistance because he no longer knew how to contact Mother. He asserted that he was willing to secure benefits for the Child as a result of his disability but that Mother had refused his offer to secure said benefits. He conceded that he worked the occasional odd job but claimed that his pay was minimal. He listed the following monthly expenses: $89 for rent, $40 for water, $70 for electricity, and $140 for cable. He noted that he also received approximately $45 per month in food stamps.

Father explained that his failure to pursue his legitimation petition and other motions was a result of poor legal counsel. He noted that his initial attorney failed to pursue his case, prompting him to hire new counsel, who left the practice of law to serve as a circuit court judge.

Cynthia M., the paternal grandmother, described a loving relationship between Father and the Child. She further claimed that she provided financial assistance for Mother before and after the Child was born and that she often transferred money to Father's debit card for him to purchase items for the Child. She denied Mother's claim that she refused to secure benefits for the Child. She explained that Mother never asked for benefits and that she would not know how to apply for said benefits.

Following the hearing, the trial court rejected the ground of abandonment for failure to visit based upon Father's attempt to secure visitation through the court system and Mother's failure to comply with the visitation agreement. However, the court found clear and convincing evidence to support termination of Father's parental rights to the Child based upon abandonment for failure to remit child support. The court further found clear and convincing evidence that termination of Father's parental rights was in the best interest of the Child. This appeal followed.

## II. ISSUES

We consolidate and restate the issues on appeal as follows:

A.      Whether clear and convincing evidence supports the court's finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

B.      Whether the trial court erred in finding that clear and convincing evidence did not support termination based upon a finding of abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

C.      Whether this court may consider an additional ground of termination based upon the failure to timely legitimate the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(vi).

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon:

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination

of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV. DISCUSSION

### A. & B.

In terminating Father's parental rights based upon the statutory ground of abandonment, the court considered his failure to remit support and to visit for the four months preceding December 12, 2014, the filing date of the termination petition. The relevant time period was August 12, 2014, through December 11, 2014.[2]

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). A parent's willful failure to visit "means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

This court has consistently held that the term willfulness as it applies to a party's failure to visit or remit support must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

---

[2] "The applicable four month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

1.

Father concedes that he never remitted child support but claims that his failure to remit support was not willful when he was unaware of a duty to remit support, when he was actively involved in litigation to establish visitation and child support, and when he was unable to provide said support. The Petitioners respond that the record supports the court's termination on this ground of abandonment.

First, we reject Father's claim that his failure to remit support was not willful when he was unaware of a duty to remit support. "A parent's obligation to support his or her child exists regardless of a court order requiring the parent to pay support." *In re Jacob M.J.*, 434 S.W.3d 565, 572 (Tenn. Ct. App. 2013) (citation omitted). Furthermore, "[e]very parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." Tenn. Code Ann. § 36-1-102(1)(H). We acknowledge that Father suffered from some cognitive impairment; however, the record does not reflect that his mental capacity was so impaired that he did not understand that the Child required food and other items for survival. Indeed, he provided token support in the form of a few diapers and snacks on occasion when the Child visited his residence. Additionally, the court credited Mother's testimony that he refused her request for support and advised her that it was not his responsibility to provide support. He also refused her attempt to secure benefits for the Child.

Citing *In re A.M.H.*, 215 S.W.3d 793 (Tenn. 2007), Father next claims that the court erred in terminating his rights on this ground when he was actively pursuing litigation. In *In re A.M.H.*, the Court was "presented with a situation in which the parents of [the child] actively pursued legal proceedings to regain custody [ ] during the 'abandonment' period but failed to visit for a period of four consecutive months immediately prior to the filing of a petition for termination of parental rights." 215 S.W.3d at 810. Unlike the situation presented in *In re A.M.H.*, Father filed a petition to legitimate the Child and other motions in 2012; however, no further action was taken until September 2014. Moreover, this case involves Father's failure to visit *and* to remit support. The record does not establish that Mother ever refused support from Father. To the contrary, he failed to provide child support throughout the entirety of the Child's lifetime and denied Mother's request for support.

Finally, Father claims that his failure to remit support was not willful when he did not have sufficient income to support himself and the Child. We acknowledge Father's disability, his difficulty in maintaining consistent employment, and his status as an indigent defendant. However, this was not a case where a parent had extenuating circumstances but faithfully provided support when he or she was able. *See In re Dylan H.*, No. E2010-01953-COA-R3-PT, 2011 WL 6310465, at *7 (Tenn. Ct. App. Dec. 16,

2011) (reversing the termination decision because mother was simply unable to fulfill her child support obligation during the relevant time period). In this case, Father never paid child support throughout the entirety of the Child's lifetime even when he was actually employed at various times. Instead, he purchased beer and other items on a regular basis and maintained a $140 monthly cable bill. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Father abandoned the Child by willfully failing to remit child support throughout the Child's lifetime, including the relevant time period.

Although Father has not appealed the court's best interest finding,[3] we have reviewed the issue because of the gravity and finality that this decision will have on his parental rights. *See In re Arteria H.*, 326 S.W.3d 167, 184 (Tenn. Ct. App. 2010) (considering the best interest finding even though the issue was not raised on appeal). Following our review, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i). Accordingly, we affirm the termination decision of the trial court.

2.

Only one statutory ground must be established by clear and convincing evidence to justify termination. Tenn. Code Ann. § 36-1-113(c). In the event of further appellate review, we will address the Petitioners' claim that termination was warranted based upon the additional ground of abandonment for failure to visit. The Supreme Court has held that "a parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *In re A.M.H.*, 215 S.W.3d at 810 (citing *Swanson*, 2 S.W.3d at 189). However, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) (citation omitted). Here, the record reflects that Mother failed to comply with an agreed visitation schedule and that Father filed a motion for contempt in the four months preceding the filing of the termination petition. With these considerations in mind, we conclude that there was not clear and convincing evidence to establish that Father willfully failed to visit during the relevant time period.

---

[3] Father claims that this court need not address this issue because the evidence does not support the trial court's termination decision.

C.

The Petitioners next assert that this court should find that termination was warranted based upon Father's failure to timely legitimate the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(9)(A)(vi). This ground was included in the termination petition but was not advanced at the hearing or ruled upon by the trial court, presumably because this ground could not be used to terminate the rights of a biological parent prior to July 2016. *In Re Bernard T.*, 319 S.W.3d 586, 599 (Tenn. 2010) ("The grounds for termination in Tenn. Code Ann. § 36-1-113(g)(9) cannot be used to terminate the rights of a person who is a child's biological parent, legal parent, or putative biological father at the time the termination petition is filed."). During the pendency of this appeal, the statute was amended to specifically provide for the termination of a putative parent's rights for failure to timely legitimate his or her child. Tenn. Code Ann. § 36-1-113(g)(9)(A)(vi) (2016). The Petitioners note that this court must apply the law in effect at the time it renders its decision, not at the time of the hearing.

While we agree with the premise of the argument, the fact remains that this ground was not advanced at the hearing or ruled upon by the trial court. The jurisdiction of this court is "appellate only." Tenn. Code Ann. § 16-4-108. Appellate courts "cannot exercise original jurisdiction" and act as the "trier-of-fact." *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005) (citations omitted); *see also Pierce v. Tharp*, 461 S.W.2d 950, 954 (Tenn. 1970) (rejecting appellants' "novel" request to adduce proof in support of their motion). This issue is without merit.

V.    CONCLUSION

This judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, John Lee M.

_____
JOHN W. McCLARTY, JUDGE